Philip **DE CARLO**, Plaintiff,

v.

James T. **RATNER**, Defendant.

No. 01 CIV. 10076(NRB).

United States District Court,
S.D. New York.

April 30, 2002.

Meiselman, Denlea, Packman & Eberz, P.C., White Plains, NY (David A. Koenigsberg, of counsel), for defendant James T. Ratner.

## OPINION & ORDER

BUCHWALD, District Judge.

Plaintiff *pro se*, Philip De Carlo ("plaintiff" or "De Carlo"), filed this action on November 14, 2001, alleging legal malpractice, breach of contract, fraud, and civil rights violations pursuant to 42 U.S.C. § 1985, arising out of his representation by defendant James T. Ratner ("defendant" or "Ratner") in the case *United States of America ex rel and Philip De Carlo v. Kiewit/AFC Enterprises*, 94 Civ. 5741(SWK). Presently before the Court is

defendant's motion to dismiss this action as time barred under the relevant statute of limitations. Further, defendant moves for an Order directing plaintiff to pay attorney's fees and costs incurred by defendant in this action and enjoining plaintiff from filing any further litigation against defendant without first obtaining written permission from the Court pursuant to 28 U.S.C. § 1651(a). For the following reasons, defendant's motion to dismiss is granted and defendant's motion for injunctive relief and sanctions is denied.

## BACKGROUND

As described in plaintiff's Amended Complaint, the facts are as follows. In April of 1998, De Carlo hired Ratner to replace his former counsel Blodnick, Blodnick, & Zelin ("the Blodnick firm"), in the representation of De Carlo in his capacity as relator in the *qui tam* action *United States of America ex rel and Philip De Carlo v. Kiewit/AFC Enterprises*, 94 Civ. 5741(SWK). In June of 1998, Ratner began urging De Carlo to dismiss several of his claims, telling De Carlo that he and the Assistant United States Attorney Robert Sadowski ("Sadowski"), who represented the United States in the case,[1] agreed that these claims were without merit. On June 29, 1998, De Carlo agreed to dismiss the first group of claims. He alleges that when he obtained a copy of the dismissal

from the Clerk's Office, he discovered it had been altered after he signed it by Ratner to include the statement, "Defendants consent, subject to a reservation of rights to pursue plaintiffs for attorneys fees and costs under applicable law with respect to all claims ever asserted by plaintiff, regardless of their dismissal hereunder." *See* Am. Compl. ¶ 9.

During October and November of 1998, settlement conversations between the parties to the action continued. In October of 1998, Ratner and De Carlo proposed the dismissal of a second group of claims with the stipulation that De Carlo would share in the fees that would be paid to the Blodnick firm under the settlement ("the fee sharing proposal"). On October 23, 1998, De Carlo signed a stipulation to this effect. De Carlo alleges that unbeknownst to him, the fee sharing proposal was never agreed to by the Government or filed with the Court. However, De Carlo does admit that on November 9, 1998, Ratner informed him that Kiewit would not agree to any fee splitting. Further, Ratner told De Carlo that AUSA Sadowski had decided to dismiss the balance of the action and that De Carlo was required to attend a conference with the Court scheduled for the next day.[2] The next day, prior to the conference, Sadowski himself informed plaintiff that based upon the Government investiga-

1. On July 20, 1995, the United States filed a Notice of Election to Decline Intervention and the Court issued an Order stating that the United States was entitled to intervene in the action at any time for good cause. The Court's Order further stated that should the relator or defendants settle or discontinue the action, the Court would solicit the written consent of the United States before ruling or granting its approval. Although the United States never formally intervened in the action, in accordance with this Order, Sadowski monitored the status of the case on behalf of the United States and was involved in all settlement decisions.

2. While the grounds for plaintiff's civil rights claim are far from clear, he appears to allege that Ratner coerced him into attending this settlement conference by telling him that Judge Peck directed all parties to appear and that he would otherwise risk sanctions. *See* Am. Compl. Ex. C. De Carlo does not, however, allege that Ratner fabricated Judge Peck's instruction that all parties be present at the settlement conference. *See Mordechai v. St. Luke's–Roosevelt Hosp. Center*, 2001 WL 699062, *2 (S.D.N.Y. June 20, 2001) (discussing well-established rule that a magistrate judge may sanction a party for failing to appear at a conference).

tion and in consideration of the Government's potential liability for Kiewit's attorney's fees and costs, he had decided to dismiss the case. In addition, Ratner informed plaintiff that he would not file an objection to the Government's dismissal, and that if De Carlo wished to do so, he would have to find another attorney to represent him. Subsequently, on the record at the November 10 conference before Magistrate Judge Peck, De Carlo agreed to the settlement of the case.[3] Under the terms of the settlement, the Blodnick firm itself did not receive a fee award.

Although plaintiff admits that Ratner notified him on November 9 that Kiewit would not agree to any fee sharing between the Blodnick firm and De Carlo, he asserts that he was "coerced and manipulated regarding the fee splitting issue." *Compare* Am. Compl. ¶ 12 with ¶ 16. De Carlo claims that he was manipulated into believing that the settlement provided for a fee award to the Blodnick firm in which De Carlo would share. After the settlement conference before Judge Peck on November 10, De Carlo asked Ratner to request that the Court set aside his oral settlement. When Ratner refused to do so, De Carlo wrote to Judge Peck in a letter dated November 13, 1999, notifying him of the alleged coercion and manipulation, and requesting that the settlement be set aside. *See* Am. Compl. ¶ 16. In this letter, De Carlo specifically states, "I have now learned that Kiewit has no intention of reimbursing the Blodnick firm for *any* legal fees, therefore my recovery in this matter will be virtually nil if you allow this to proceed." *See* Am. Compl. Ex. D. In response, Judge Peck informed De Carlo that any further action needed to be made by motion. However, Ratner refused to make the motion at De Carlo's request, raising his fear of liability for court sanctions. *See also* Am. Compl., Ex. E (letter from Ratner to De Carlo discussing grounds for refusing to move to set aside the settlement).

On December 4, 1998, De Carlo signed the Stipulation and Order of Settlement and Dismissal. De Carlo claims that although this agreement contained terms not included in the oral settlement of November 10, Ratner failed to protest their inclusion. More specifically, De Carlo alleges that although it should have been apparent to Ratner from the Stipulation and Order of Dismissal that "the Government was pursuing an alternate remedy," and he therefore should have demanded "disclosure of the collateral agreement between the Government and Kiewit," Ratner failed to do so and thereby failed to protect De Carlo's property interest in the settlement. *See* Am. Compl. ¶ 32.

On February 24, 1999, a conference was held before Judge Kram to address De Carlo's complaints about the fairness of the settlement agreement. After hearing from all the involved parties, Judge Kram found that De Carlo was informed prior to the November 10, 1998 settlement that the Government and Kiewit had rejected De Carlo's fee sharing proposal, and that De Carlo had entered the settlement with full knowledge of its terms. Accordingly, Judge Kram rejected De Carlo's arguments and so ordered the settlement. *See* Koenigsberg Decl. Ex. I, Tr. of Conference with Judge Kram, held Feb. 24, 1999.

## DISCUSSION

### A. Legal Malpractice and Contract Claims

 The statute of limitations for a claim of legal malpractice is three years

---

**3.** An Order agreed to by the parties on November 10 and signed by Judge Peck on November 12, 1998, confirms the settlement as entered on the record on November 10 and dismisses the case with prejudice.

regardless of whether the underlying claim is based in tort or contract. *See* C.P.L.R. 214(6); *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 24, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001). Such an action accrues not when the plaintiff discovers the legal malpractice, but when the malpractice is committed. *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001). Ratner argues that De Carlo's claim is barred by the three year statute of limitations because his claim accrued no later than November 10, 1998, and this case was not filed until November 14, 2001. Further, with respect to plaintiff's argument that the settlement agreement signed by De Carlo on February 4 contained new terms that Ratner should have objected to, defendant argues that plaintiff's allegations fail to state a claim. We take each of these arguments in turn.

### 1. Any claim for malpractice with respect to the fee sharing proposal accrued no later than November 10, 1998.

 Based on the facts alleged in the amended complaint, it is clear that the alleged injury of which De Carlo complains surrounding the fee sharing proposal occurred no later than the settlement conference with Judge Peck on November 10, 1998. According to De Carlo's own allegations, by that time Ratner had conducted settlement negotiations on De Carlo's behalf, notified De Carlo that Kiewit would not agree to any fee sharing provision, and recommended that De Carlo accept the proffered settlement. In fact, De Carlo admits in his Amended Complaint that Ratner told him on November 9 that Kiewit did not consent to his fee sharing with the Blodnick firm, and that Ratner told him on November 10 that he would not file an objection on De Carlo's behalf to the Government's dismissal. *See* Am. Compl. ¶¶ 13, 16. In addition, De Carlo's letter to

Judge Peck dated November 13, 1998, describing De Carlo's dissatisfaction with the terms of the November 10 oral settlement, illustrates that any alleged malpractice surrounding the rejected fee sharing proposal had already occurred. Further, in ruling that the settlement should not be set aside, Judge Kram found that at the time De Carlo entered into the settlement before Judge Peck, he was fully aware that the Government and Kiewit had rejected the fee sharing proposal. *See* Koenigsberg Decl. Ex. I, Tr. of Conf., Feb. 24, 1999. These facts make clear that not only did any alleged malpractice surrounding the fee sharing proposal occur by November 10, but De Carlo was even aware of the terms of the settlement no later than November 13, 1998. For this reason, because the present action was not commenced until November 14, 2001, plaintiff's malpractice and contract claims are barred under the three year statute of limitations.

### 2. De Carlo's signing of a written settlement agreement on February 4, 1999, is not a basis for finding that De Carlo's malpractice claim is within the three year statute of limitations.

To support his contention that his malpractice claim is not time barred, De Carlo argues that the basis for his malpractice claim is actually Ratner's failure to protect De Carlo's "property interest" in the "alternate remedy" being pursued by the Government as evidenced by the written settlement. *See* Am. Compl. § 32. Plaintiff's invocation of the subsequent written settlement agreement is a red herring, however. De Carlo has utterly failed to articulate the existence of a "property interest" or "alternative remedy" created under the written agreement that Ratner failed to protect. Rather, De Carlo's malpractice claim is clearly premised upon his expectation that Ratner should have

achieved greater relator fees for him under the settlement, a claim that accrued no later than November 10.[4] De Carlo was bound by his oral settlement of November 10, and the written settlement that was so ordered by Judge Kram in February did not alter the terms of that oral settlement.[5] *See* Koenigsberg Decl. Ex. H (order signed by Judge Peck, dated November 12, 1998, dismissing the action with prejudice). Therefore, since it is clear that De Carlo's malpractice and contract claims are actually premised on his dissatisfaction with the terms of the oral settlement agreement of November 10, these claims are time barred.

### 3. The continuous representation doctrine is inapplicable to De Carlo's malpractice claim.

 In one last attempt to preserve his malpractice claim, De Carlo argues for the application of the continuous representation doctrine. The continuous representation doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." *Greene v. Greene*, 56 N.Y.2d 86, 94, 451 N.Y.S.2d 46, 436 N.E.2d 496 (1982). The doctrine further contemplates the quandary of a malpractice litigant who maintains an ongoing relationship with his attorney. *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 167–68, 726 N.Y.S.2d 365, 750 N.E.2d 67

(2001). To invoke the continuous representation doctrine, a plaintiff must establish: (1) ongoing representation connected to the specific matter at issue in the malpractice action, and (2) "clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney." *Icahn v. Todtman, Nachamie, Spizz & Johns P.C.*, No. 99 Civ. 11783(WHP), 2001 WL 1160582 (S.D.N.Y. Oct.1, 2001) (citing *Nobile v. Schwartz*, No. 99 Civ. 2375(RWS), 2000 WL 1753036, at *8 (S.D.N.Y. Nov.29, 2000)).

 We find plaintiff's reliance on the continuous representation doctrine unavailing based on the facts alleged in his Amended Complaint. For the continuous representation doctrine to apply, a predicate of continuing trust and confidence must exist. *Coyne v. Bersani*, 61 N.Y.2d 939, 474 N.Y.S.2d 970, 463 N.E.2d 371 (1984); *Pittelli v. Schulman*, 128 A.D.2d 600, 512 N.Y.S.2d 860 (1987). However, if there is a breakdown in that relationship, the doctrine is not applicable. For example, in *Aaron v. Roemer, Wallens & Mineaux, L.L.P.*, 272 A.D.2d 752, 707 N.Y.S.2d 711 (3d Dept 2000), the Appellate Division considered an attorney malpractice case in which it was clear from correspondence written by the plaintiff that he perceived that his relationship with his attorneys had been "irretrievably broken" prior to the formal termination of this relationship by counsel's withdrawal. The Court held that because of this earlier

---

4. In fact, the damages he seeks are based on the thirty percent relator's share he believes he should have received if the Government had prevailed in the prosecution of the case.

5. De Carlo seems to be arguing that Ratner failed to preserve his relator's share of the settlement funds distributed by Kiewit under the final settlement. However, in examining the written settlement agreement that was so ordered by Judge Kram, it largely encompass-

es terms already entered into on the record on November 10 before Judge Peck. Moreover, the written settlement does not change the terms of the settlement as it pertains to De Carlo, and does not, in this Court's reading of it, contemplate an "alternate remedy" or "collateral settlement" between the Government and Kiewit. De Carlo's assertions are conclusory at best—a transparent attempt to escape dismissal on statute of limitations grounds.

disruption, "the relationship necessary to invoke the continuous treatment rule did not persist until formal termination of the nominal representation by defendants, but rather ceased with the disruption of the client's trust and reliance." *Aaron*, 272 A.D.2d at 755, 707 N.Y.S.2d at 714.

Similarly, in our case, De Carlo concedes that Ratner made clear both before and after the settlement conference of November 10 that he would not participate in De Carlo's attempts to obstruct the settlement or have it set aside. *See* Am. Compl. ¶¶ 12, 13, 15. In fact, De Carlo stated in a letter to Judge Peck dated November 13, 1998, that he was informed in a November 9 facsimile from Ratner "that if a settlement could not be worked out, [Ratner] would resign from [De Carlo's] case." *See* Am. Compl. Ex. D. Therefore, because it is clear from the Amended Complaint and documents appended thereto that the attorney-client relationship between Ratner and De Carlo was "irretrievably broken" before November 14, 1998, plaintiff may not rely upon the continuous representation doctrine and his malpractice and contract claims are barred under the three year statute of limitations.

## B. Fraud

Upon learning that Ratner planned to oppose this action on statute of limitations grounds, De Carlo amended his complaint to include a fraud claim. This claim appears to be premised upon Ratner's actions in inducing De Carlo to agree to the settlement by misrepresenting to him that he would be entitled to share a fee award with the Blodnick firm. De Carlo argues that his fraud claim is governed by the six year statute of limitations of C.P.L.R. § 213(8), rather than the three year statute of limitations applied to malpractice

actions, and that it is therefore not time-barred.

We reject De Carlo's argument for several reasons. First, he simply has not pleaded a cause of action in fraud distinct from his malpractice claim. "[I]n applying the Statute of Limitations we look for the reality, and the essence of the action and not its mere name." *Brick v. Cohn–Hall–Marx Co.*, 276, N.Y. 259 264 (1937) (rejecting plaintiff's invocation of the discovery rule and dismissing fraud claim where plaintiff's claim was clearly based on breach of contract and not fraud); *see also Garber v. Ravitch*, 186 A.D.2d 361, 588 N.Y.S.2d 163 (1st Dept.1992) (holding that "[w]here an allegation of fraud is not essential to the cause of action pleaded, [and] its only purpose [is] to avoid an anticipated defense of the Statute of Limitations," the shorter limitations period applied to replevin actions should govern). Additionally, not only is De Carlo's fraud claim nothing more than an attempt to preserve his malpractice claim against Ratner, his allegations of fraud are wholly inconsistent and contradictory. With respect to the element of fraudulent misrepresentation, De Carlo alleges on one hand that he was deceived as to the fee splitting issue to induce him to settle, but on the other hand specifically admits that Ratner informed him on November 9 that Kiewit "would not agree to any fee splitting." *See* Am. Compl. ¶ 12. Moreover, the question that De Carlo seeks to raise, namely whether Ratner misrepresented that the settlement included a fee sharing arrangement between De Carlo and the Blodnick firm, was decided in Ratner's favor by Judge Kram when she decided at the February 26 conference that De Carlo's accusations were without merit.[6] *See* Koenigs-

---

**6.** Further, a review of the docket sheet shows that De Carlo did not appeal Judge Kram's ruling.

berg Decl. Ex. I, Tr. of Conf. at 21–22. Thus, plaintiff's allegations that he was fraudulently induced to enter the settlement have already been considered and rejected by Judge Kram. For all these reasons, defendant's motion to dismiss plaintiff's fraud claim is granted.

### C. Civil Rights Claim

■ De Carlo also amended his complaint to include a claim for a violation of his civil rights pursuant to 42 U.S.C. § 1985(2), based on Ratner's alleged coercion of plaintiff to attend the November 10 settlement conference and subsequent coercion of plaintiff to sign the written settlement agreement. A cause of action under § 1985(2) contemplates injury caused by conspiracies aimed towards intimidating parties and witnesses in federal court proceedings.[7] *Kush v. Rutledge*, 460 U.S. 719, 720, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). In New York, the statute of limitations on a § 1985 claim is three years, *Kashelkar v. Rubin & Rothman*, 97 F.Supp.2d 383 (S.D.N.Y.2000), accruing when the plaintiff learns of the injury. *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 331 (2d Cir.1997) ("Under federal law, which governs when claims brought under §§ 1983 and 1985 accrue, the statute of limitations begins to run once the plaintiff knows of the injury on which the claim is based.").

■ The facts as alleged in De Carlo's complaint demonstrate that plaintiff's civil rights claim accrued by November 9, 1998. De Carlo alleges that the "coercion" upon which this claim is based began with a November 9 memo from Ratner instructing him to appear at the settlement conference the next day. Further, as previously discussed, De Carlo clearly knew of Ratner's alleged "coercion and kidnapping" prior to November 14, 1998, as evidenced by his letter to Judge Peck dated November 13. Accordingly, regardless of when this alleged coercion continued until,[8] plaintiff's civil rights claim is time-barred and defendant's motion to dismiss the claim is granted.

### D. Sanctions

■ At the initial pretrial conference held on January 31, 2002, I advised plaintiff that based on the pleadings, his case appeared to be barred by the statute of limitations. I also gave plaintiff several weeks to determine whether he still wished to proceed with this action. Unfortunately, plaintiff persisted in pursuing this case, expending the resources of both this Court and the defendant. However, plaintiff's conduct in pursuing this action does not rise to a level meriting sanctions under Fed. R. Civ. Pro. 11(c)(1)(B). Furthermore, defendant's motion for sanctions has not been made in conformity with the provisions of Rule 11(c)(1)(A), which require that a motion for sanctions be made separately from other motions or requests and describe the specific conduct alleged to have violated 11(b). Therefore, we decline to impose sanctions under Rule 11 and defendant's motion for sanctions in the form of costs and attorney's fees is denied.

---

7. Although defendant brings this motion to dismiss on statute of limitations grounds alone, reserving all other challenges to the Amended Complaint, we note the improbability of plaintiff's § 1985 claim withstanding a 12(b)(6) motion.

8. Clearly, given that accrual occurs when plaintiff learns of the injury, plaintiff's argument that the conduct continued past November 10 is without merit. *See* Pl.'s Opp'n at 5 ("Ratner's coercion and subsequent kidnaping continued until December 3, 1998 when, under the threat of a suit for legal fees by Kiewit, I was forced to travel from my home in Morris County, New Jersey to the United States Attorneys [sic] Office in New York to sign the Government's Stipulation.").

### E. Motion for Injunction Against Future Filings

 Citing *Pentagen Technologies Int'l v. United States*, 172 F.Supp.2d 464, 474 (S.D.N.Y.2001), Ratner requests that the Court enjoin plaintiff from filing any further litigation against Ratner without the consent of the Court. In *Pentagen*, such an injunction was issued by the Court pursuant to 28 U.S.C. § 1651, where the Court found that dismissals and/or sanctions were insufficient to deter a plaintiff who had brought nine similarly unsuccessful lawsuits arising out of the same general facts. Similarly, in *Malley v. New York City Bd. of Educ.*, 112 F.3d 69 (2d Cir. 1997), the Second Circuit upheld such an injunction against a litigant whose case had been dismissed five times in the Southern District of New York, and who had filed two actions in the Eastern District and one action in the District of New Jersey.

In the present matter, Ratner bases his motion for an injunction on plaintiff's continued and frivolous attempts to overturn the November 10 settlement, his attempts to gain vengeance against persons involved in reaching the settlement, and his previous filing of two lawsuits against Kiewit (the *qui tam* action as well as a wrongful termination action). However, given that the present action is the only case that De Carlo has filed against Ratner and the only action filed for malpractice, we think that defendant's request is premature. Accordingly, defendant's motion for injunctive relief is denied.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims as barred under the applicable statutes of limitations is granted and defendant's motion for sanctions and injunctive relief is denied. The Clerk of Court is respectfully directed to close this case.

IT IS SO ORDERED.