**Steven Jude HOFFENBERG, Plaintiff,**

**v.**

**HOFFMAN & POLLOK, Defendant.**

**No. 00 Civ. 3151(RWS).**

United States District Court,
S.D. New York.

March 5, 2003.

Steven Jude Hoffenberg, Ayer, MA, Plaintiff pro se.

Hoffman Pollok & Pickholz, New York, NY (John L. Pollok, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Hoffman & Pollok, now known as Hoffman Pollok & Pickholz LLP ("HPP") has moved pursuant to Rule 12(b)6 to dismiss the complaint of *pro se* plaintiff Steven Jude Hoffenberg ("Hoffenberg") alleging fraud and malpractice against HPP, his former law firm. For the reasons set forth below, the motion is granted.

### Prior Proceedings

Hoffenberg filed his complaint on April 25, 2000, alleging diversity jurisdiction arising out of his incarceration in the Fed-

eral Correctional Institute in Bradford, Pennsylvania.

Giving the complaint a fair reading, it appears that it alleges first that HPP issued fraudulent billing to him for services that were never provided (Compl. at ¶¶ 16, 43–49); second that HPP fraudulently induced Hoffenberg to "write a letter about the over one million dollars advanced to HP by Pro Se," which appears to refer to a letter dated May 29, 1996 in which Hoffenberg released all claims he had against HPP. *Id.* at ¶ 18; third, that HPP committed malpractice and breached their fiduciary duty not only throughout the course of HPP's representation of Hoffenberg, *Id.* at ¶ 41, but also in connection with the monies set aside for legal services by a consent judgment entered against Hoffenberg. The complaint alleges that HPP took a $450,000 set aside from a third party and colluded with a third party, forcing Hoffenberg to enter into an adverse agreement for HPP's benefit. *Id.* at ¶¶ 19–42.

On September 9, 2001, Hoffenberg was granted an additional forty-five days to serve HPP. A letter from HPP of June 13, 2000 acknowledging receipt of a complaint from Hoffenberg was addressed to the judge to whom the action had previously been assigned. An affidavit of service dated in June 2000, was received on October 3, 2001. On November 14, 2001, the action was dismissed in error as a result of overlooking the recently received June 2000 affidavit. On May 14, 2002, the Second Circuit vacated the dismissal and remanded the case to consider whether service was proper. *Hoffenberg v. Hoffman Pollok & Pickholz, LLP*, No. 01–9427, 34 Fed. Appx. 18 (2d Cir.2002). HPP in its instant motion acknowledges the efficacy of service. On May 20, 2002, Hoffenberg filed a motion to recuse this Court which was denied on October 30, 2002.

Hoffenberg has been a party to actions in this district since February 1993 when the Securities and Exchange Commission ("SEC") commenced a civil action against him and others. *SEC v. Towers Fin. Corp.*, No. 93 CIV. 0744(WK)(AJP), 1996 WL 406685, at *1 (S.D.N.Y. Mar. 26, 1996). Hoffenberg was formerly Chief Executive Officer ("CEO") and Chairman of the Board of Towers Financial Corporation ("Towers"). Towers filed for bankruptcy in March 1993. In October 1994, the Bankruptcy Trustee for Towers obtained a civil judgment against Hoffenberg and other officers of Towers on consent in the amount of $400,000,000, plus a separate judgment in the amount of $8,050,000.

On February 17, 1993, Hoffenberg and others agreed to a preliminary injunction in the SEC action that enjoined him from dissipating assets, exempting Hoffenberg's living expenses and reasonable attorney's fees. In October 1994, the SEC obtained a final judgment against Hoffenberg incorporating the terms of the 1993 asset freeze.

A criminal action was commenced against Hoffenberg and others for conspiracy during 1991 and 1992 to obstruct the SEC's investigation, *United States v. Hoffenberg*, Nos. 94 Cr. 213(RWS), 95 Cr. 321(RWS), 1997 WL 96563, at *6 (S.D.N.Y. Mar. 5, 1997). Hoffenberg pled guilty on April 20, 1995 to five criminal counts: (1) conspiracy to violate the securities laws by fraudulently selling securities; (2) mail fraud; (3) conspiracy to obstruct justice; (4) tax evasion; and (5) mail and wire fraud. His motion to withdraw this plea was subsequently denied. *United States v. Hoffenberg*, 169 F.R.D. 267, 268 (S.D.N.Y.1996). He received a sentence of 240 months in prison and was required to make restitution of $475,157,340, a judgment which was affirmed. *United States*

v. Hoffenberg, 164 F.3d 620, 1998 WL 695933 (2d Cir.1998).

In December 1999, Hoffenberg, having sought a review of his conviction under 28 U.S.C. § 2255, filed a motion to recuse this Court on the basis of a conflict of interest, which was denied as was the petition for review. Hoffenberg v. United States, 2000 WL 1523142, at *1 (S.D.N.Y. Oct.13, 2000). The Honorable Thomas P. Griesa, in reviewing Hoffenberg's § 2255 motion, held that the "motion raised no constitutional grounds for attacking Hoffenberg's criminal convictions that could properly be construed as a § 2255 motion." Id. (citing Hoffenberg v. United States, No. 00 Civ. 1686(TPG) (S.D.N.Y. March 6, 2000)). On August 8, 2000, Hoffenberg filed another recusal motion in connection with his effort to review his convictions under 28 U.S.C. §§ 144, 455, which was denied on October 13, 2000. The court directed that "any appeal from this order, or from my order of January 28, 2000 denying his prior recusal motion, would not be taken in good faith." Hoffenberg, 2000 WL 1523142, at *3.

In December 2000, Hoffenberg filed a legal malpractice action against Daniel Meyers, a court-appointed attorney who represented Hoffenberg from April 1996 to March 1997, following HPP's withdrawal. The action alleged that Meyers had failed to achieve a withdrawal of Hoffenberg's guilty plea and to challenge the prior $450,000 set aside in favor of HPP which was contained in the consent judgment. Hoffenberg v. Meyers, No. 99 CIV. 4674 RWS, 2002 WL 57252, at *1. Meyers' motion for summary judgment dismissing Hoffenberg's amended complaint was granted on January 16, 2002.

### Background

The following recital of background facts are gleaned from the court proceedings and the submissions of HPP and do not constitute findings of fact relied upon in the substantive discussion which follows this section.

On April 19, 1993, Hoffenberg executed a formal retainer agreement with HPP, for the purposes of his representation in both pending and future civil and criminal matters against him. Since Hoffenberg's assets had been frozen by the SEC, the funding of the retainer was subject to SEC approval which was granted.

During the first quarter of 1994, the initial retainer had been exhausted. HPP's predecessor then made an application to the SEC for the payment of additional funds by notice sent which contained the details of the legal services provided with worksheets and time slips. Payment was approved.

On October 25, 1994, Hoffenberg consented to entry of a final judgment against him and various entities he controlled with the Towers Trustee. The consent judgment was a product of negotiations between Hoffenberg and his counsel, HPP, the Trustee, counsel for the Trustee and the SEC. It provided that the defendants named, including Hoffenberg and Towers, agreed to pay $400,000,000 to the creditors of Towers, which represented the losses resulting from Hoffenberg's fraud, ultimately found to be $475,157,340. The consent judgment also provided that prejudgment interest of $108,000,000, which constituted a portion of the funds restrained by the SEC, be transferred to the Trustee in partial satisfaction of the $400,000,000 judgment. The transfer of these funds to the Trustee was subject to approval by the SEC.

Under the terms of the consent judgment, HPP received $450,000 to be held in escrow for legal services, which were subsequently to be provided (the "Set Aside"). (Consent J. Against Steven Hoffenberg and TFC Mgmt., No. 94–8055A at ¶ V

(Oct. 25, 1994).) Part V of the consent judgment stated:

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Trustee shall transfer $450,000 to two interest-bearing Accounts at Republic National Bank with the law firm of Hoffman & Pollok, as signatories, $200,000 to one account ("Account A") and $250,000 to the other account ("Account B"). Both accounts A and B shall be used solely for providing legal services to Hoffenberg by Hoffman & Pollok, and any amounts not spent on fees for legal services actually rendered shall be remitted to the Trustee. Funds in Account A may be used for legal representation (including attorneys' fees and expenses) of Hoffenberg in any criminal actions now pending against him. Hoffman & Pollok shall remit to the Trustee any unspent funds in Account B, plus related interest, within thirty (30) business days after the completion of all legal representation now pending against him in the Southern District of New York and the Northern District of Illinois. Hoffman & Pollok shall remit to the Trustee any unspent funds from Account A within ten days after the termination of all civil litigation or twenty-four (24) months from the execution of this Agreement whichever is earlier.

Hoffman & Pollok shall provide the Trustee with monthly statements from the Accounts, along with Hoffman & Pollok's monthly invoices for legal services rendered to Hoffenberg. If the necessity arises, funds may be transferred from Account A to Account B and/or Account B to Account A.

The Trustee shall review for reasonableness the monthly invoices within five (5) business days of receipt from Hoffman & Pollok and approve the invoices, in writing, in whole or in part.

Hoffman & Pollok shall withdraw funds from the account and/or transfer funds between accounts only upon written authorization of the Trustee, but the Trustee shall not unreasonably withhold his authorization. Any and all disputes as to the reasonableness of any invoices shall be adjudicated by the United States Bankruptcy Court for the Southern District of New York.

Hoffenberg waived any right to appeal the consent judgment and attested that he entered into the consent judgment voluntarily, acknowledging that "no tender offer, promise, or threat of any kind has been made by Trustee or any of their officers, agents, or representatives, in consideration of this Consent," and that the consent embodied the entire understanding of all parties thereto. (Consent J. Against Steven Hoffenberg and TFC Mgmt., No. 94–8055A at ¶ 4.) The consent judgment was entered by the Honorable Whitman Knapp on November 2, 1994.

Pursuant to the consent judgment, HPP submitted invoices and back-up worksheets to the Trustee for his approval. In early 1995, the Trustee was replaced, but HPP's invoices continued to be approved by the new trustee and his counsel. HPP's submitted invoices for February, March and June 1996, totaling $51,341.96, were declined approval. However, this dispute was settled with approval from the Bankruptcy Court, and HPP returned $96,890.96 on December 20, 1996 to the trustee. This represented the unused criminal portion of the $450,000 Set Aside allocated to them by the consent judgment.

On April 11, 1996, HPP moved to be relieved as counsel for Hoffenberg for all civil actions, Hoffenberg having alleged "wrong doing by our firm [HPP], ineffective assistance of counsel, threatened law suits against our firm and requests to the United States Attorneys Office to investigate us [HPP] for potential criminal prosecution." *SEC v. Towers Fin. Corp.*, 1996

WL 288176, at *2 (S.D.N.Y. May 31, 1996) (Opinion and Order of Magistrate Judge Peck granting withdrawal). HPP had previously been relieved as Hoffenberg's counsel in the related criminal cases, where Hoffenberg "accused his counsel of being ineffective in both the criminal and civil cases." *Id.* at 1. On April 16, 1996, while HPP's withdrawal motion was pending, Hoffenberg alleged that HPP committed malpractice in connection with its receipt of funds under the consent judgment, as well as contesting HPP's billings against the $800,000 retainer payment to HPP. However, on May 29, 1996, in a letter to Bankruptcy Judge Abrams, Hoffenberg withdrew these claims, in writing:

> I accept the legal work provided by Hoffman & Pollock [sic]. I have no dispute with the work and money paid to Hoffman & Pollok. All work provided to me has been billed and paid for to date. Any and all claims made by me have been withdrawn. I am requesting everybody involved in our cases to understand that the dispute over money between Hoffman & Pollock [sic] and I have been settled.

This letter is referenced in the complaint herein and is quoted and/or referenced by Magistrate Judge Peck and Honorable Whitman Knapp in their decisions granting HPP's withdrawal.

On May 31, 1996, Magistrate Peck recommended the granting of HPP's withdrawal based on HPP's assertion that although "none of these allegations contained in these letters are even remotely true, they have created a gulf between Hoffenberg as client and Hoffman & Pollok as attorneys which cannot be bridged." *SEC*, 1996 WL 288176, at *2. In reviewing Magistrate Judge Peck's recommendation, Judge Knapp acknowledged that the court had received letters both accusing HPP of ineffective assistance of counsel and insisting that all conflicts between the parties had

been resolved before Magistrate Peck had recommended withdrawal. *SEC v. Towers Fin. Corp.*, No. 93 CIV. 0744(WK)(AJP), 93 CIV. 0810(WK)(AJP), 1996 WL 383238, at *1 (S.D.N.Y. Jul. 8, 1996). In addition, after Magistrate Peck's recommendation, Judge Knapp received another letter from Hoffenberg "directly insisting that he [Hoffenberg] has no quarrel with Hoffman & Pollok, and that he wants them to continue to represent him in the civil cases." *Id.* Judge Knapp adopted Magistrate Judge Peck's recommendation in its entirety on July 8, 1996, thereby relieving HPP from representation.

On November 8, 1996, Hoffenberg filed a complaint against HPP with the Departmental Disciplinary Committee of the Appellate Division, First Department (Steven Hoffenberg's Disciplinary Compl., No. 96.3406 (Nov. 5, 1996)) alleging that he was forced to sign the consent judgment when there was no proof he owed any money to creditors. In addition, Hoffenberg claimed he was not provided with legal bills representing $1,225,000 in retainer fees. Although Hoffenberg had acknowledged that he had no quarrel with HPP's services as late as May 1996, he, nevertheless, demanded an accounting. On April 17, 1998, HPP was informed that the Disciplinary Committee closed the file on the matter and would not take any further action.

### The Claim of Fraudulent Billing is Untimely

Although Hoffenberg's complaint is to be read liberally, this does not prevent dismissal where the issue presented is one of law as Hoffenberg himself well knows. *100,000 Victim Families Note Holders Owners of Sec. in Towers Fin. Corp. v. Schulte, Roth & Zable*, 210 F.Supp.2d 286 (S.D.N.Y.2001) (dismissing Hoffenberg's complaint for failing to establish standing

or state a claim upon which relief could be granted after having been given an opportunity to cure his complaint); *Levin v. Chase Manhattan Bank Corp.*, No. 98–CV–7998(JG), 1999 WL 669261, at *1 (E.D.N.Y. Aug.24, 1999) (dismissing pro se's complaint on basis of res judicata and failure to state a claim); *Brown v. Croce*, 967 F.Supp. 101 (S.D.N.Y.1997) (granting summary judgment where, although court construed pro se's claim generously, pro se did not establish claim).

The statute of limitations for a claim of fraud is six years from the commission of the fraud or two years from the time of discovery, whichever is later.[1] N.Y. C.P.L.R. § 213(8) (West 2002) (" § 218(8). Actions commenced within six years: … 8. An action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."); N.Y. C.P.L.R. § 203(g) (West 2002); *Phillips v. Levie*, 593 F.2d 459, 462 n. 12 (2d Cir.1979) ("Section 213(8) is not the sole statute involved in determining the New York limitations period for fraud actions. N.Y. C.P.L.R. § 203(f) must also be consulted…. When sections 213(8) and 203(f) are read together, they have been construed to mean that in fraud actions suit must be commenced within six years after the commission of the fraud or within two years of the date the fraud was or should have been discovered, whichever is longer."); *Hoff Research & Dev. Labs., Inc. v. Philippine Nat'l Bank*, 426 F.2d 1023, 1025 n. 1 (2d Cir.1970) ("[T]hese sections together have been held to yield … the six years from accrual or two

years from discovery rule for actual fraud actions."); *Bader v. Fleschner*, 463 F.Supp. 976, 981 (S.D.N.Y.1978) (citing both § 213(8) and § 203(g)'s predecessor).

Hoffenberg asserts that HPP issued fraudulent legal bills on June 26, 1996, alleging that on that day he received a bill, which included an entry for August 31, 1993 in the amount of $150,000, for which he claims legal services were never provided. Additionally, Hoffenberg has alleged that all billing provided on June 26, 1996 was inflated.

■■■■ Reading the complaint as liberally as possible, the claim of fraud accrued on August 31, 1993, the date of the commission of the wrongdoing, and expired on August 21, 1999, six years later. *Id.* at ¶¶ 45–48; *see also Ackerman v. Nat'l Property Analysts, Inc.*, 887 F.Supp. 494, 504 (S.D.N.Y.1992) (time barring, under the six-year statute of limitations, fraud claims of all plaintiffs who invested in limited partnerships prior to December 19, 1985, where complaint was filed on December 19, 1991). Alternatively, the claim accrued upon Hoffenberg's discovery of the inflated legal bills on June 26, 1996. Under the discovery method of CPLR § 203(g), the statute of limitations accrued on June 26, 1996 and expired on June 26, 1998, two years later. *Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978) (time barring claim under discovery method). Thus, Hoffenberg's claim of fraudulent billing is time-barred under N.Y. C.P.L.R. §§ 218(8) and 203(g) and is, therefore, dismissed.

---

1. The determination of which state's laws apply in this action is governed by the Erie doctrine and choice of law principles. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since HPP, with its principal place of business in New York, is

the partnership in this diversity action and all relevant actions took place in New York, New York's substantive law governs this action. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

### The Claim of Malpractice Is Untimely

██ The statute of limitations for a claim of legal malpractice is three years. N.Y. C.P.L.R. § 214(6) (West 2002) (" § 214(6). Actions to be commenced within three years: ... 6.[A]n action to recover damages for malpractice, other than medical, dental or podiatric malpractice ..."); *DeCarlo v. Ratner*, 204 F.Supp.2d 630, 634 (S.D.N.Y.2002); *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 165, 726 N.Y.S.2d 365, 366, 750 N.E.2d 67 (N.Y.Ct. App.2001). Claims of breach of fiduciary duty are also governed by a three-year statute of limitations. *Nobile v. Schwartz*, 2000 WL 1753036, at *6 (S.D.N.Y. Nov.29, 2000); *see also Cooper v. Parsky*, 140 F.3d 433, 440–441 (2d Cir.1998) (stating claim for breach of fiduciary duty would be governed by a three-year limitations period). The cause of action accrues and the limitations period starts running from the time the malpractice is committed, not when the client discovers it. *DeCarlo*, 204 F.Supp.2d at 635; *Shumsky*, 96 N.Y.2d at 166, 726 N.Y.S.2d at 367, 750 N.E.2d 67.

██ Hoffenberg has alleged that HPP committed malpractice and breach of fiduciary duty in connection with the consent judgment (Compl. at ¶¶ 20–21, 23–40) and throughout the course of their representation of Hoffenberg. *Id.* at ¶ 41. The statute of limitations for malpractice and breach of fiduciary duty in connection with the consent judgment accrued from October 25, 1994, the date the judgment was entered and the time at which HPP committed the actions, and expired on October 25, 1997, at the termination of the three-year time limit. *DeCarlo*, 204 F.Supp.2d at 635 (time barring malpractice claim where alleged injury took place on November 10, 1998, but action was not filed until November 14, 2001); *Nobile*, 2000 WL 1753036, at *7 (time barring plaintiff's legal malpractice claim where alleged injury took place on March 7, 1995 and action was not commenced until August 16, 2000). Thus, Hoffenberg's legal malpractice claim and claim for breach of fiduciary duty are time-barred.

Even if the statute of limitations is deemed not to run until July 31, 1996, when HPP was discharged, the three-year limitations period expired on July 31, 1999. Thus, under any circumstances, Hoffenberg's claim is time-barred under 214(6) and, therefore, dismissed.

### Failure to Plead Fraudulent Inducement

Hoffenberg has asserted that he was fraudulently induced into entering into the consent judgment with HPP so it could receive the retainer.

██ Under New York law, a claim of fraudulent inducement requires proof,

(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.

*Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir.1986) (quoting *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980)); *see also Furniture Consultants, Inc. v. Datatel Minicomputer Co.*, No. 85 CIV. 8518(RLC), 1986 WL 7792, at *6 (S.D.N.Y. Jul.10, 1986). In addition, Rule 9(b) requires that in pleading fraud, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Therefore, "[t]o satisfy the particularity requirement of Rule 9(b), a complainant must adequately specify the statements it claims were false

or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989).

 Even reading the complaint liberally, Hoffenberg fails to state a claim for fraudulent inducement with sufficient particularity. He alleges that "on or about May 29, 1996, HP acted with fraud in the inducement with Pro Se to have Pro Se write a letter about the over one million dollars advanced to HP by Pro Se." (Compl. at ¶ 18.) Rule 9(b)'s requirements are designed "to provide defendant with fair notice of plaintiff's claim," and Hoffenberg's reference to this incident does not constitute proper notice under the statute. *Cosmas,* 886 F.2d at 11.

In addition, the surrounding circumstances of this letter in no way show Hoffenberg's detrimental reliance. *Furniture,* 1986 WL 7792, at *1 (dismissing fraudulent inducement claim for failure of particularity where plaintiff did not provide in complaint any descriptions of how fraudulent inducement took place). The May 29, 1996 letter written to Judge Abrams, in which he releases his claims against HPP and states, "I have no dispute with the work and money paid to Hoffman & Pollock [sic]," was written by Hoffenberg while in prison. This letter was also sent to this Court, Judge Knapp, Judge Peck, and the then United States Attorney Mary Jo White, an action which evidences Hoffenberg's use and beneficial reliance on the letter. Therefore, since neither harm nor benefit stemming from Hoffenberg's use of the letter can be attributed to Hoffenberg in any way possible, the connection between HPP and any fraudulent inducement of Hoffenberg is absent.

By failing to meet the burden of proof for fraudulent inducement under New York law and to plead his claim with sufficient particularity under rule 9(b), Hoffenberg's claims are dismissed.

*Conclusion*

The complaint is dismissed on grounds of the statute of limitations and failure to plead fraudulent inducement. Leave is granted to file an amended complaint with respect to the latter ground only.

It is so ordered.