Steven Jude **HOFFENBERG**,
Petitioner,

v.

**UNITED STATES of America**,
Respondent.

**No. 00 Civ. 1686(RWS).**

United States District Court,
S.D. New York.

June 21, 2006.

Robin C. Smith, Esq., Brooklyn, NY, for Petitioner.

Michael J. Garcia, United States Attorney for the Southern District of New York, New York City (Jessica A. Mordas, Assistant U.S. Attorney, of counsel), for Respondent.

## OPINION

SWEET, District Judge.

Petitioner *pro se* Steven Jude Hoffenberg ("Hoffenberg" or the "Petitioner") has filed a petition under 28 U.S.C. § 2255 to vacate his criminal conviction (the "Petition"). The Government has opposed the Petition which is denied for the reasons set forth below.

### Prior Proceedings

Hoffenberg filed the Petition on June 21, 2000, and it was assigned to this Court. Hoffenberg sought recusal, and the Court of Appeals remanded his appeal to permit this Court to consider the recusal motion, which was denied by an opinion filed August 25, 2004 (the "August Opinion").

The August Opinion set forth the proceedings surrounding the earlier recusal motions and the erroneous filing of the Petition, as well as certain of the previous proceedings involving Hoffenberg.

Counsel was appointed for Hoffenberg and the Government filed its opposition. The Petition, the Government's opposition, and the memorandum in support of the Petition were marked fully submitted on February 14, 2004.

### The Underlying Criminal Proceedings

From 1974 until April 1993, Hoffenberg served as the chief executive officer, president, and chairman of the board of Towers Financial Corporation ("TFC"). *United States v. Hoffenberg*, Nos. 94 Cr. 213 and 95 Cr. 321(RWS), 1997 WL 96563, at *1, *10 (S.D.N.Y. March 5, 1997), *aff'd*, Nos. 97–1159(L) and 97–1166, 1998 WL 695933 (2d Cir. Sept.22, 1998). In February 1993, following a lengthy investigation, the Securities and Exchange Commission ("SEC") filed suit against Hoffenberg, TFC, and other TFC officials for, among other things, securities fraud through the circulation of false and misleading financial statements to investors regarding TFC's financial condition. *Hoffenberg*, 1997 WL 96563, at *7; *United States v. Hoffenberg*, 908 F.Supp. 1265, 1268 (S.D.N.Y.1995); *see SEC v. Towers Fin. Corp.*, 205 B.R. 27, 27–28 (S.D.N.Y.1997). Soon thereafter, in March 1993, TFC filed for bankruptcy. *Hoffenberg*, 1997 WL 96563, at *6. The collapse of TFC resulted in losses to investors totaling hundreds of millions of dollars. *Hoffenberg*, 908 F.Supp. at 1266; *Hoffenberg*, 1997 WL 96563, at *6.

On April 19, 1994, Hoffenberg was indicted in the Northern District of Illinois on various fraud charges, including mail fraud. *Hoffenberg*, 1997 WL 96563, at *7. On April 20, 1994, Hoffenberg was indicted in the Southern District of New York on

numerous charges related to the SEC investigation and lawsuit, including mail fraud, securities fraud in connection with the sale of notes and bonds of TFC, unlawful conspiracy, and obstruction of justice. *Id.* at \*8; *United States v. Hoffenberg,* 169 F.R.D. 267, 269 (S.D.N.Y.1996). The criminal case was assigned to this Court. The indictment pending in the Northern District of Illinois was transferred to the Southern District of New York on April 11, 1995 and assigned to this Court. *Hoffenberg,* 1997 WL 96563, at \*7–\*8.

On April 20, 1995, Hoffenberg pled guilty to four counts of a superseding information related to the April 20, 1994 indictment: (i) conspiracy to violate the securities laws by fraudulently selling securities, in violation of 18 U.S.C. § 371; (ii) mail fraud, in violation of 18 U.S.C. § 1341; (iii) conspiracy to obstruct justice, in violation of 18 U.S.C. § 371; and (iv) tax evasion, in violation of 26 U.S.C. § 7201. *See Hoffenberg,* 1997 WL 96563, at \*8. Hoffenberg also pled guilty to one count of the indictment transferred from the Northern District of Illinois: mail fraud in violation of 18 U.S.C. § 1341. *See Hoffenberg,* 1997 WL 96563, at \*1.

On March 7, 1997, this Court sentenced Hoffenberg to twenty years' imprisonment, followed by a three-year term of supervised release, as well as a $1 million fine, approximately $475 million in restitution, and a $50 special assessment on each of the five counts. *Hoffenberg,* 1997 WL 96563, at \*1.

Hoffenberg appealed his criminal conviction and sentence and on September 22, 1998 the Second Circuit affirmed the conviction and sentence. *United States v. Hoffenberg,* Nos. 97–1159(L) and 97–1166, 164 F.3d 620, 1998 WL 695933 (2d Cir. 1998). Hoffenberg filed a petition for rehearing and a petition for rehearing *en banc,* which the Second Circuit denied in a January 15, 1999 order.

Hoffenberg is currently incarcerated and serving his sentence.

### The Petition

■ Although Hoffenberg is currently represented by counsel, at the time he filed his § 2255 motion he was not represented by an attorney. In addition, he alleged in his filing that he was held in solitary housing for ten months. Thus, Hoffenberg's submissions should be construed liberally "to raise the strongest arguments that they suggest." *Green v. United States,* 260 F.3d 78 (2d Cir.2001) (citing *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (holding that the allegations in a pro se complaint are "held to less stringent standards than formal pleadings drafted by lawyers").

Construing Hoffenberg's applications liberally, he has alleged the following with respect to his § 2255 claim:

1) his counsel in the district court proceeding, Hoffman & Pollok, fraudulently billed Hoffenberg $150,000.00 in one day;

2) although Hoffenberg had paid Hoffman & Pollok a $1,225,000.00 retainer for representation in the criminal case, Hoffman & Pollok accepted a $450,000.00 payment for Hoffenberg's legal fees from the trustee in the bankruptcy proceedings, Alan Cohen ("Cohen"), who had interests that were adverse to Hoffenberg;

3) Cohen acted irresponsibly as trustee and was later fired from his position. Hoffenberg had a viable defense to the effect that it was Cohen who squandered Towers' funds and was responsible for Towers' collapse;

4) Hoffenberg paid Hoffman & Pollok a $1,225,000.00 retainer expecting to go to trial;

5) Hoffman & Pollok, because it had accepted fees from the bankruptcy trustee, forced Hoffenberg to plead guilty, rather than assert his defense that it was Cohen the trustee, from whom it had accepted $450,000.00, who was responsible for the collapse of TFC;

6) the district court appointed Daniel Meyers ("Meyers") after Hoffman & Pollok were fired by Hoffenberg, and appellate counsel Gerald Bodell ("Bodell"), each of whom was ineffective for failing to raise Hoffenberg's claim that Hoffman & Pollok were laboring under an actual conflict of interest which resulted in a lapse in representation.

The facts alleged in Hoffenberg's submissions, construed liberally, constitute a claim that Hoffman & Pollok were operating under an actual conflict of interest that resulted in a lapse in representation, entitling Hoffenberg to reversal. *U.S. v. Schwarz*, 283 F.3d 76, 90 (2d Cir.2002); *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir.2000); *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir.2000); *United States v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998); *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994).

### The Ineffective Assistance Of Counsel Claim Is Denied

During the criminal investigation and through the time of his guilty plea, Hoffenberg was represented by the law firm Hoffman & Pollok. Hoffenberg retained Hoffman & Pollok on April 19, 1993 to represent him in both pending and future civil and criminal matters against him. *See Hoffenberg v. Hoffman & Pollok*, 248 F.Supp.2d 303, 306 (S.D.N.Y.2003). Initially, Hoffman & Pollok was paid pursuant to a retainer agreement signed by Hoffenberg. *Id.* The funding of the retainer was subject to approval by the SEC, and in early 1994, the funding ran out. *Id.*

Subsequently, Hoffenberg, along with his counsel Hoffman & Pollok, other parties related to TFC, and the SEC, entered into negotiations towards a judgment intended to settle some of the pending TFC-related litigation. *Id.* These negotiations resulted in a consent judgment, which was executed on October 25, 1994. *Id.* In the consent judgment, Hoffenberg agreed to the entry of a final judgment against him and various entities that he controlled. Cohen acted as the Chapter 11 bankruptcy trustee for TFC (the "TFC Trustee"). *Id.* As part of the consent judgment, Hoffenberg and other defendants agreed to pay $400,000,000 to the creditors of TFC. *Id.* In addition, the TFC Trustee agreed to put $450,000 into escrow for the purpose of paying Hoffman & Pollok's legal fees in connection with the firm's continuing representation of Hoffenberg in the pending criminal proceedings. *Id.* at 307. Hoffenberg attested that he entered into the consent judgment voluntarily and without any promises or threats made towards him. *Id.*

As set forth above, the criminal proceedings were resolved by Hoffenberg's plea of guilty on April 20, 1995. However, in April 1996, Hoffenberg sought to discharge Hoffman & Pollok as his attorneys in his criminal case based on an "absolute conflict." *SEC v. Towers Fin. Corp.*, No. 93 Civ. 0744(WK)(AJP), 1996 WL 288176 at *1 (S.D.N.Y. May 31, 1996); *see SEC v. Towers Fin. Corp.*, No. 93 Civ. 0744(WK)(AJP), 1996 WL 383238, at *1 (S.D.N.Y. July 8, 1996). Hoffenberg alleged that Hoffman & Pollok had a conflict based on the $450,000 payment put into escrow by the TFC Trustee pursuant to

the consent degree, because at the same time the TFC Trustee was an adverse party to Hoffenberg in various litigations. *Id.* This Court relieved Hoffman & Pollok as counsel in the criminal case. *Id.* Subsequently, Hoffman & Pollok made a motion, which was granted, to be relieved as Hoffenberg's counsel in the pending TFC civil litigation. *SEC v. Towers Fin. Corp.,* 1996 WL 383238, at *1.

From April 1996 to March 1997, after Hoffenberg's plea and in connection with his sentencing, Meyers represented Hoffenberg pursuant to an appointment under the Criminal Justice Act. During 1997 and 1998, Bodell represented Hoffenberg on direct appeal from his criminal conviction.

All three of Hoffenberg's ineffective assistance of counsel claims are based upon the payment of $450,000 to his counsel, Hoffman & Pollok, by the TFC Trustee through the escrow fund set up in the consent judgment. However, Hoffenberg has failed to establish any "actual conflict" nor any "lapse in representation." The fact of this court-approved payment does not create a conflict of interest where Hoffenberg has not alleged that "during the course of the representation the attorney's and the defendant's interests diverge[d] with respect to a material factual or legal issue or to a course of action." *Schwarz,* 283 F.3d at 91 (finding conflict of interest where attorney for police officer was paid by the Police Benevolent Association (the "PBA"), the PBA had an interest in the officer not implicating his fellow officers in the crime, and the attorney's fee was contingent on the PBA's continued approval). Instead, by resting on the fact of the TFC Trustee's escrow payment alone, Hoffenberg has made only a "speculative assertion[ ] of bias or prejudice" which is not sufficient to sustain his claim. *Triana v. United States,* 205 F.3d 36, 41 (2d Cir. 2000).

Hoffenberg has not alleged that the TFC Trustee limited Hoffenberg's choice of counsel in any way, Hoffman & Pollok having represented Hoffenberg in connection with civil and criminal litigation related to TFC beginning in early 1993, a year and a half before the consent judgment was executed and before the payment was made. *Hoffenberg v. Hoffman & Pollok,* 248 F.Supp.2d at 306. During the time period, Hoffenberg himself paid Hoffman & Pollok, pursuant to a retainer agreement, until his funds ran out. *Id.* Moreover, Hoffenberg has not alleged, nor could he, that the TFC Trustee, by his payment to Hoffman & Pollok, "influence[d that firm's] professional judgment" in its representation of Hoffenberg. *Amiel v. United States,* 209 F.3d 195, 199 (2d Cir.2000). Hoffenberg has not alleged that the TFC Trustee attempted to "direct or regulate" Hoffman & Pollok's professional judgment in its representation of him or even that the TFC Trustee was involved in any way. *See* N.Y. Jud. Law DR 5–107(b).

In addition, Hoffenberg was a party to the consent judgment that established the escrow fund to provide for his representation. He has not alleged that he did not choose to be represented by Hoffman & Pollok at the time the fund was set up, or that he objected to the payment arrangement, that the payment was in any way contingent on a particular result, that Hoffman & Pollok had something to gain by a particular outcome, or that Hoffman & Pollok's payment was affected by any aspect of his case at all. *See, e.g., Schwarz,* 283 F.3d at 92–96. Thus, if Hoffenberg has shown any conflict at all here, it is only "a mere theoretical division of loyalties" which is not sufficient to sustain his claim. *United States v. Feyrer,* 333 F.3d 110, 116 (2d Cir.2003). His alleged defense—that Cohen, not he, was responsi-

ble for the bankruptcy—fails to relate to the underlying criminal charges against him.

The conduct of Cohen as Bankruptcy Trustee is irrelevant to the conspiracy charged in the underlying indictment against Hoffenberg which was alleged to have taken place between 1987 through 1993.

■ In addition to Hoffenberg's failure to allege facts showing a conflict, Hoffenberg has failed to allege facts showing "that the conflict manifested itself as an 'actual lapse in representation,'" another required element of his claim. *Feyrer,* 333 F.3d at 116 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Rather, the sole impact alleged by Hoffenberg of the $450,000 payment by the TFC Trustee to Hoffman & Pollok was, according to Hoffenberg, that his counsel exerted an "undue influence" on him to plead guilty. (Pet. at 3, 5–6.) Hoffenberg has not alleged that he did not want to plead guilty, that he wanted to proceed to trial, or that Hoffman & Pollok should have been able to secure him more preferable terms for his guilty plea. Indeed, Hoffenberg has not pointed to a single "plausible alternative defense strategy or tactic [that] might have been pursued," but was not, as required to succeed on his conflict of interest claim. *Feyrer,* 333 F.3d at 116. Because he has not made the prerequisite showing of some alternative strategy, not pursued by counsel, he has also failed to meet his burden of showing that "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."

Finally, because Hoffenberg's other ineffective assistance of counsel conflict claims against Meyers and Bodell are derived solely from the same fact of the TFC Trustee's payment to Hoffman & Pollok, they also fail. Hoffenberg's ineffective assistance of counsel claims against both Meyers and Bodell are based on those lawyers' failure to pursue conflict of interest claims based on Hoffman & Pollok's representation of Hoffenberg while that firm accepted the $450,000 payment from the escrow fund set up by the TFC Trustee. Because Hoffenberg's underlying conflict of interest claim against Hoffman & Pollok is without merit, his subsequent attorneys' failure to pursue that claim cannot be the basis of an ineffective assistance of counsel claim against them. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that to succeed on ineffective assistance of counsel claim, defendant must show that (i) counsel's performance fell below an objective standard of reasonableness, and (ii) counsel's deficient performance prejudiced the defendant).

Also unrelated to the ineffective assistance of counsel claim is the unexplained $150,000 entry in the Hoffman & Pollok bill (Pet.Ex.1), characterized by Hoffenberg as a "bogus inflated bill at time of assistance—acted with fraud and deceit." (Pet.¶ 11(3).)

### Conclusion

The Petition is denied.

Submit judgment on notice.

It is so ordered.