*24
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Under CPLR 214 (6), a three-year statute of limitations is applicable in nonmedical malpractice actions, regardless of whether the underlying theory is based in contract or tort. The appeals now before us raise the novel issue of what “malpractice” means in this statute. Put another way, given that malpractice is professional misfeasance toward one’s client, who is a “professional” within the section? The question arises in the context of insurance agents and brokers.
 

 I.
 

 In the first case,
 
 Chase Scientific Research v NIA Group,
 
 plaintiff Chase, a manufacturer of precision rotors, in May 1995 engaged defendants — insurance brokers — to procure property insurance for its business; on May 31, 1995, defendants procured such a policy for plaintiff. Some months later, on January 19, 1996, a severe storm damaged plaintiff’s warehouse and inventory. In response to plaintiff’s insurance claim, the carriers acknowledged the incident as a “covered occurrence” under the policy but offered only $50,000 despite plaintiff’s demand for the policy limit of $550,000 on claimed losses exceeding $1 million. Plaintiff later settled a case against the carriers for $275,000.
 

 On January 7, 1999, plaintiff filed suit against defendants, asserting one cause of action for negligence and one for breach of contract based on defendants’ failure to secure coverage adequate to indemnify plaintiff against losses to its highly specialized inventory. Defendants moved to dismiss the entire action as time-barred under CPLR 214 (6), contending that the claim was one for malpractice, that it accrued on the policy date, and that more than three years had elapsed before this action was commenced. Plaintiff countered that the action was governed by the six-year statute of limitations applicable to contract actions (CPLR 213 [2]), and that, even applying the three-year statute of limitations (CPLR 214 [6]), the claim was timely because it accrued on the date of loss. Supreme Court agreed with defendants and dismissed the complaint. The Appellate Division affirmed.
 

 In the second case,
 
 Gugliotta v Apollo Roland Brokerage,
 
 defendant Apollo through its insurance agent (defendant Thomas Lovetere) in December 1994 procured insurance for plaintiff’s commercial building from defendant New York Merchant
 
 *25
 
 Bankers Insurance Company. In February 1995, Herman Fermín slipped and fell in the building, and in December 1995 commenced an action against plaintiff for personal injuries. Only after the accident did plaintiff discover that he lacked general liability coverage. With the assistance of Lovetere, plaintiff engaged attorneys Charles L. Emma and Harry Cardillo to defend the Fermín action. After counsel failed to appear, a default judgment was entered for $767,900. Claiming both negligence and breach of contract, on March 6, 1998 plaintiff commenced the present action for failure to procure adequate insurance coverage, which defendants Apollo and Lovetere sought to dismiss as time-barred under CPLR 214 (6).
 
 [1]
 
 As in
 
 Chase,
 
 Supreme Court determined that CPLR 214 (6) was the applicable statute of limitations, rendering plaintiff’s claims untimely, and the Appellate Division affirmed. We now reverse in
 
 Chase,
 
 reinstating both causes of action, and modify in
 
 Gugliotta,
 
 reinstating the breach of contract claim.
 

 II.
 

 While a malpractice action may be grounded in negligence— subject generally to a three-year statute of limitations — it can theoretically also rest on breach of contract to obtain a particular bargained-for result
 
 (see,
 
 Kenneth R. Kirby,
 
 The Six-Year Legal Malpractice Statute of Limitations: Judicial Usurpation of the Legislative Prerogative?,
 
 66 NY State BJ, Dec. 1994, at 14). Breach of contract actions are subject generally to a six-year statute of limitations. When the Legislature amended CPLR 214 (6) to apply a three-year limitations period to all nonmedical malpractice actions, whether based on tort or contract (L 1996, ch 623), it ended one quandary but exposed another: who are the “professionals” whose misfeasance toward clients is subject to the shortened limitations period?
 

 “Malpractice” has for more than a century appeared in our statutes of limitation, without definition of the term
 
 (see,
 
 Code
 
 *26
 
 Civ Pro § 384 [two-year limitations period for “malpractice”]; Civ Prac Act § 50 [same]). Initially, the cause of action was limited to medical negligence or incompetence resulting in personal injury
 
 (see,
 
 Richard B. Lillich,
 
 The Malpractice Statute of Limitations in New York and Other Jurisdictions,
 
 47 Cornell LQ 339 [1962]). Causes of action for other professional misfeasance were governed by the three-year negligence or six-year contract statute of limitations
 
 (see, e.g., Flanagan v Mount Eden Gen. Hosp.,
 
 24 NY2d 427, 433 n 5 [noting that the 1900 amendment to Code Civ Pro § 384, adding “malpractice” to the two-year statute of limitations, applied to physicians and surgeons];
 
 Federal Intl. Banking Co. v Touche,
 
 248 NY 517 [refusing to apply Civ Prac Act § 50 (1) to accountants];
 
 Glens Falls Ins. Co. v Reynolds,
 
 3 AD2d 686 [lawyer’s malpractice is governed by three-year negligence statute of limitations, but an agreement to obtain a specific result may trigger six-year contract statute of limitations];
 
 Camp v Reeves,
 
 209 App Div 488, 494 [rejecting application of two-year Statute of Limitations to malpractice claims against attorneys, and applying six-year contract statute],
 
 affd
 
 240 NY 672;
 
 Hurlburt v Gillett,
 
 96 Misc 585 [applying two-year malpractice statute of limitations to dental malpractice claim],
 
 affd
 
 176 App Div 893).
 

 In 1962, the Legislature replaced the two-year limitations period contained in Civil Practice Act § 50 (1) with CPLR 214 (6), bringing the statute of limitations for malpractice actions in line with the limitations period for negligence generally. The revisers noted that the new statute “was added on the suggestion that malpractice involving property damage — e.g., against an accountant — may be based on a contract theory and would otherwise be governed by the six year provision unless specific reference was made” (Sixth Report of Sen Fin Comm on Revision of Civ Prac Act, 1962, NY Legis Doc, No. 8, at 92-93).
 
 [2]
 
 And indeed, 214 (6) was construed to apply to malpractice claims against attorneys and other nonmedical professionals
 
 (see, Gilbert Props, v Millstein,
 
 33 NY2d 857 [attorney malpractice claim time-barred by 214 (6)]). Leaving 214 (6) in place, in 1975, in response to a perceived health care crisis affecting medical malpractice insurance, the Legislature shortened the statute of limitations for medical malpractice actions to two and one-half years (CPLR 214-a;
 
 Bleiler v Bodnar,
 
 65 NY2d 65,
 
 *27
 
 68). The passage of CPLR 214-a thus again created a disparity among professions as to their period of exposure to a malpractice suit.
 

 When this Court subsequently confronted nonmedical malpractice claims based on a breach of contract theory, it applied the six-year contract statute of limitations (see,
 
 Sears, Roebuck & Co. v Enco
 
 Assocs., 43 NY2d 389;
 
 Video Corp. v Flatto Assocs.,
 
 58 NY2d 1026;
 
 National Life Ins. Co. v Hall & Co.,
 
 67 NY2d 1021;
 
 Santulli v Englert, Reilly & McHugh,
 
 78 NY2d 700). In all of these “contractual” malpractice cases, the Court’s analysis centered on the nature of the claim asserted by plaintiffs — tort or contract — in determining the applicable statute of limitations. While the cases involved architects, lawyers and insurance brokers, no issue was raised — and none decided — as to whether those actors were capable of malpractice within the contemplation of CPLR 214 (6).
 

 Most recently, in response to
 
 Sears
 
 and its progeny, the Legislature amended 214 (6) to clarify that the limitations period in nonmedical malpractice claims is three years, “whether the underlying theory is based in contract or tort” (CPLR 214 [6], as amended by L 1996, ch 623). This change was intended not only to remediate the
 
 Sears
 
 line of cases but also to reduce potential liability of insurers and corresponding malpractice premiums, and to restore a reasonable symmetry to the period in which all professionals would remain exposed to a malpractice suit (Letter from NY State Ins Dept, July 16, 1996, Bill Jacket, L 1996, ch 623, at 9-10 [“The Courts have applied (a contract) theory to architect and legal malpractice”]; Legis Rep No. 76-B of NY State Bar Assn, Bill Jacket, at 13-14 [“there is no rationale for subjecting professional malpractice by an architect, engineer, lawyer, or accountant to a statute of limitations over twice as long as that applied to doctors, dentists and podiatrists”]).
 

 As a final link in the statute’s litigation chain, barely five months ago, in
 
 Brothers v Florence
 
 and its companion cases (95 NY2d 290) — involving the alleged malpractice of attorneys and real estate appraisers — this Court concluded that the amended statute applied retroactively to bar certain claims accruing prior to the effective date of the statute. Again, no one disputed that a real estate appraiser was capable of malpractice within the meaning of 214 (6), and we resolved the appeal without reaching that question
 
 (see, Brothers,
 
 95 NY2d, at 298, 306).
 

 
 *28
 
 III.
 

 Defining “professional” is a task engaging many courts, for many purposes
 
 (see,
 
 Michael J. Polelle,
 
 Who’s on First, and What’s a Professional?,
 
 33 USF L Rev 205 [1999]). While the term has myriad applications in law — as, for example, in insurance policy exclusions and peer negligence standards — we underscore that our definition is limited to the context presented: CPLR 214 (6). Moreover, our objective, as always in matters of statutory interpretation, is to effectuate the will of the Legislature. Here, that task is complicated by the fact that, in CPLR 214 (6), “malpractice” is undefined and “professional” unmentioned.
 

 “Professional” is a term in wide usage, commonly understood to have several meanings. For example, it denotes a measure of quality, as in professional dry cleaners; a distinction from trade or businesspeople, and from amateur status, as in professional golfers; a lifework as opposed to pastime, as in professional musicians. Often there are study, licensure and continuing skills requirements, as for barbers, electricians and real estate brokers. Thus, neither common parlance nor licensure can determine the meaning of “professional,” for surely the Legislature did not have such a vast, amorphous category of service providers in mind when it amended CPLR 214 (6) (Alexander, 1999 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C:214 [6], 2001 Cum Pocket Part, at 214 [“The Legislature presumably sought to confer the protections of CPLR 214 (6) on a relatively small group of defendants. Otherwise, it would have shortened the six-year breach of contract period to three years for all contracts for services.”]).
 

 Nor does the law defining “professional” for other purposes necessarily resolve the statute of limitations issue before us
 
 (see, e.g., People ex rel. Fullam v Kelly,
 
 255 NY 396 [music a profession, not a trade, under zoning resolution];
 
 People ex rel. Tower v State Tax Commn.,
 
 282 NY 407 [customhouse broker not a professional for purposes of unincorporated business tax exclusion]; Business Corporation Law § 1501; Education Law, tit VIII, art 130
 
 et seq.
 
 [“The Professions”]). An abbreviated statute of limitations bars claims of allegedly injured parties, and should therefore reflect the Legislature’s intent that the particular defendant groups receive such a benefit. In
 
 Karasek v LaJoie
 
 (92 NY2d 171), for example, we refused, absent legislative clarification, to include licensed
 
 *29
 
 psychologists within the category of “medical” services subject to the truncated limitations period of CPLR 214-a
 
 (see also, McCarthy v Volkswagen of Am.,
 
 55 NY2d 543, 548-549 [expansion of toll could “greatly and perhaps inappropriately expand the class of persons able to assert the toll * * *. The expansion of the statute in the manner asserted by plaintiff therefore might best be reserved for legislative attention”]).
 

 The term “professional” is also commonly understood to refer to the learned professions, exemplified by law and medicine, which have particular relevance to the history of CPLR 214 (6). The two- and three-year malpractice statutes of limitation, after all, began with doctors, enlarged soon after to encompass attorneys and accountants. In 1996, when CPLR 214 (6) was before the Legislature for amendment, the report of the New York State Bar Association referred specifically to those categories in speaking of professional malpractice: “an architect, engineer, lawyer or accountant” (Legis Rep No. 76-B of NY State Bar Assn, Bill Jacket, L 1996, ch 623, at 13-14).
 

 The qualities shared by such groups guide us in defining the term “professional.” In particular, those qualities include extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards
 
 (see, Matter of Freeman,
 
 34 NY2d 1, 7-8;
 
 see also, BDO Seidman v Hirshberg,
 
 93 NY2d 382, 389-390;
 
 Port Auth. v Evergreen Intl. Aviation,
 
 179 Misc 2d 674). Additionally, a professional relationship is one of trust and confidence, carrying with it a duty to counsel and advise clients
 
 (see, Murphy v Kuhn,
 
 90 NY2d 266, 270;
 
 Kimmell v Schaefer,
 
 89 NY2d 257, 263).
 

 This definition, we believe, implements the Legislature’s intention to benefit a discrete group of persons affected by the concerns that motivated the shortened statute of limitations
 
 (see,
 
 Alexander, 2000 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C:214 [6], 2001 Cum Pocket Part, at 211). We are mindful as well that our definition ideally should establish a bright line, so that, absent legislative clarification, it can be fairly and uniformly applied. Moreover, with the rise of large numbers of skilled “semi-professions”
 
 (see,
 
 Polelle,
 
 supra,
 
 33 USF L Rev, at 205), any broader definition would, for the future, make it hard to draw meaningful distinctions and the groups covered by CPLR 214 (6) would quickly proliferate.
 

 
 *30
 
 Applying these criteria, we conclude that insurance agents and brokers are not within the ambit of CPLR 214 (6).
 
 [3]
 
 While agents and brokers must be licensed, they are not required to engage in extensive specialized education and training; rather, a person who has been regularly employed by an insurance company, agent or broker for at least one year during the three years preceding the date of license application may qualify to be a broker (Insurance Law § 2104 [c] [1] [B], [C]). True, lawyers, engineers, architects and accountants also can circumvent the formal education criteria of their respective fields, but they must surmount far higher hurdles. Aspiring attorneys must complete at least one academic year as a matriculated student at an approved law school as well as an aggregate of four years in the supervised study of law in a New York State law office, with credit for law school attendance (22 NYCRR 520.4 [a]); engineers, architects and accountants also face extensive work experience requirements (Education Law § 7206 [2] [engineers, 12 years]; Education Law § 7304 [2] [architects, 12 years]; Education Law § 7404 [2] [accountants, 15 years]).
 

 Nor are insurance agents and brokers bound by a standard of conduct for which discipline might be imposed (see,
 
 e.g.,
 
 22 NYCRR part 603 [attorney discipline]; Education Law §§ 6509, 6510, 6511 [professional misconduct, proceedings and discipline for accountants, architects, engineers and others, but not insurance agents or brokers]). Moreover, as this Court recently made clear, an insurance agent has a common-law duty to obtain requested coverage, but generally not a continuing duty to advise, guide or direct a client based on a special relationship of trust and confidence
 
 (Murphy v Kuhn, supra,
 
 90 NY2d, at 273). To be sure, insurance agents and brokers are held to high standards of education and qualification
 
 (see, e.g.,
 
 Insurance Law §§ 2103, 2104), but these criteria are simply not as rigorous as those embraced by what we conclude are the professionals within CPLR 214 (6).
 

 Thus, in both cases we conclude that the actions against defendant agents and brokers are governed not by CPLR 214 (6), but by the limitations periods applicable to negligence actions (CPLR 214 [4]) and breach of contract actions (CPLR 213
 
 *31
 
 [2]). In
 
 Chase
 
 (but not Gugliotta) plaintiff argues that — even applying CPLR 214 (4) — its negligence cause of action should be reinstated, and we agree. Plaintiff’s action was commenced on January 7, 1999, within three years of what both parties agree was the accrual date for the negligence claim, January 19, 1996. In both cases the “continuous treatment” doctrine is inapplicable. Finally, while plaintiffs’ contract claims were indisputably brought within six years of accrual and thus must be reinstated, we note that the sole issue before us is the applicable statute of limitations. No challenge has been made to the viability of the breach of contract claims, and we do not pass on them.
 

 Accordingly, in
 
 Chase
 
 the order of the Appellate Division should be reversed, with costs, and the complaint reinstated. In
 
 Gugliotta,
 
 the order of the Appellate Division, insofar as appealed from, should be modified, without costs, to reinstate the cause of action for breach of contract as against Apollo, and otherwise affirmed.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 In
 
 Chase Scientific Research v NIA Group:
 
 Order reversed, with costs, and defendants’ motion to dismiss the complaint denied.
 

 In
 
 Gugliotta v Apollo Roland Brokerage:
 
 Order, insofar as appealed from, modified, without costs, by reinstating the cause of action for breach of contract against defendant Apollo Roland Brokerage, Inc. and, as so modified, affirmed.
 

 [1]
 

 . The only defendant before us is Apollo, and the only remaining claims are for negligence and breach of contract. Plaintiffs fraudulent misrepresentation claim against Apollo was dismissed for failure to state a cause of action, and has not been raised in this appeal. Supreme Court severed the action against additional defendants Andrew J. Corsa & Son (an insurance broker assisting Apollo in procuring the policy), New York Merchant Bankers Insurance Co., Charles L. Emma and Harry Cardillo, and dismissed additional causes of action. Plaintiffs motion for leave to appeal as against defendant Thomas Lovetere was dismissed for nonfinality
 
 (Gugliotta v Apollo Roland Brokerage,
 
 95 NY2d 917).
 

 [2]
 

 . The Legislature did not, at that time, adopt the Law Revision Commission recommendation that the statute cover malpractice actions “based on tort, contract or any other theory” (1962 Report of NY Law Rev Comm, at 232, 233). In effect, that amendment was enacted in 1996 (L 1996, ch 623).
 

 [3]
 

 . Other States have divided as to whether insurance agents and brokers are professionals for malpractice purposes
 
 (see, e.g., Pierce v AALL Ins.,
 
 531 So 2d 84 [Fla] [no];
 
 Plaza Bottle Shop v Torstrick Ins. Agency,
 
 712 SW2d 349 [Ky] [no];
 
 Flemens v Harris,
 
 323 Ark 421, 915 SW2d 685 [yes];
 
 Burns v Connecticut Mut. Life Ins.,
 
 743 A2d 566 [RI] [yes]).