**Scott L. BAENA, Litigation Trustee, Plaintiff,**

v.

**WOORI BANK (f/k/a Hanvit Bank), et. al., Defendants.**

No. 05 Civ. 7018(PKC).

United States District Court, S.D. New York.

Sept. 11, 2007.

Dallas L. Albaugh, Richard Levy, Jr., Kathryn Elaine Wagner, Pryor Cashman Sherman & Flynn, LLP, New York City, David W. Trench, Robert W. Turken, Bilzin Sumberg Baena Price & Axelrod, LLP, Miami, FL, for plaintiff.

Steven M. Bierman, Sidley Austin LLP, New York City, for Woori Bank, Shinhan Bank, defendants.

Pierre H. Bergeron, Squire, Sanders & Dempsey, L.L.P., Cincinnati, OH, Jeffrey E. Storch, Squire, Sanders & Dempsey, L.L.P., Palo Alto, CA, for Chohung Bank, defendant.

Tai Hyun Park, Shearman & Sterling, LLP, New York City, for Hana Bank, defendant.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge.

This lawsuit arises from the November 2000 financial collapse of Learnout & Hauspie Speech Products N.V. ("L & H Belgium"), a company whose shares were traded on the NASDAQ. L & H Belgium created and licensed software, primarily in the field of speech recognition. Plaintiff Scott L. Baena, court-appointed litigation trustee for L & H Belgium, brings suit against four South Korean banks, Woori

Bank (f/k/a Hanvit Bank), Shinhan Bank, Chohung Bank and Hana Bank, contending that defendants either intentionally or through their negligent actions aided and abetted John Seo, Chief Executive Officer of Learnout & Hauspie Korea, ("L & H Korea"), a subsidiary of L & H Belgium, in committing a fraud on L & H Belgium.[1]

Defendants now move to dismiss the Third Amended Complaint ("TAC") on the grounds that plaintiff's claims are barred by the three-year statute of limitations set forth in New York's Civil Practice Law and Rules ("CPLR") § 214(2) because they are statutory in nature or, alternatively, by the three-year statute of limitations set forth in CPLR § 214(4) because they sound in negligence rather than fraud. Further, defendants contend that even if plaintiff's claims do sound in fraud and are timely, plaintiff has failed to plead the fraud claim with the particularity required by Rule 9(b), Fed.R.Civ.P. Defendants Chohung Bank and Hana Bank have also filed supplemental motions to dismiss on grounds that are specific to them.

For the reasons discussed below, I conclude that Counts I and II, plaintiff's negligence claims, are barred by the three-year statute of limitations set forth in CPLR § 214(2) or, alternatively, by the three-year limitations period set forth in CPLR § 214(4). I further conclude that Counts III and IV sound in fraud, are not barred by the statute of limitations and are pled with sufficient particularity to satisfy the pleading standard set forth in Rule 9(b). I further conclude that plaintiff has failed to state a claim against Hana Bank. Plaintiff concedes that the TAC does not state a claim against Chohung Bank.

**BACKGROUND**

### A. Procedural Background

The Complaint in this action was filed on August 5, 2005 and amended as of right on August 11, 2005. A Second Amended Complaint ("SAC") was filed on December 23, 2005, with leave of court and in response to defendants' assertions that plaintiff's pleading had not alleged fraud with sufficient particularity. (12/21/06 Tr. at 23) The SAC asserted that the defendants had intentionally aided and abetted Seo in both a breach of his fiduciary duties to L & H Belgium and in committing fraud on L & H Belgium. Defendants moved to dismiss the SAC, contending that (1) plaintiff lacked standing because his claims were barred under the doctrine of *in pari delicto;* (2) the courts of South Korea presented an adequate alternative forum and dismissal was appropriate under the doctrine of *forum non conveniens;* (3) plaintiff's claims were time-barred by the applicable South Korean statute of limitations; and (4) plaintiff had failed to allege his fraud-based claims with the particularity required by Rule 9(b), Fed.R.Civ.P.

In a Memorandum and Order dated October 11, 2006, this Court ruled that plaintiff had standing to assert all claims and that plaintiff's claims were timely under the laws of Belgium, the country's whose laws would be borrowed by a New York court under CPLR § 202. *Baena v. Woori Bank,* 2006 WL 2935752, \*\*2–4, 6–8 (S.D.N.Y. Oct.11, 2006) (*"Baena I"*). This Court also concluded that *forum non conveniens* was not appropriately applied to plaintiff's claim as there was no adequate alternative forum in which plaintiff's claim could be brought. *Id.* at \*5. However, plaintiff had not pled facts in the SAC

---

**1.** Throughout this Memorandum and Order, the Republic of Korea will be referred to as South Korea and the Kingdom of Belgium as Belgium. Hanvit Bank is now known as Woori Bank. The Third Amended Complaint refers throughout to Hanvit Bank and that is the name used herein.

sufficient to satisfy the heightened pleading standard of Rule 9(b). *Id.* at **8–9. Plaintiff was granted leave to replead.

Plaintiff filed the TAC, on October 31, 2006. In conjunction with the filing of the TAC, plaintiff filed a "Notice of Intent to Rely on Foreign Law" as required by Rule 44.1, Fed.R.Civ.P. (Docket # 59) Plaintiff stated an intent to "rely on Korean substantive law in support" of the TAC. (*Id.*)

### B. *The Third Amended Complaint*

For purposes of the pending motion, the Court will accept as true the allegations of the TAC and draw all reasonable inferences in plaintiff's favor. *See Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir.1999) (applying principle to both Rule 12(b)(6) and Rule 9(b) motions), *cert. denied*, 529 U.S. 1097, 120 S.Ct. 1831, 146 L.Ed.2d 775. The TAC alleges that, in September of 1999, L & H Belgium sought to expand its presence in South Korea through acquisition of Bumil Information and Communications Co. Ltd. ("Bumil"). (TAC ¶ 16) Seo was Bumil's sole shareholder and agreed to a purchase price of $50 million for the company. The purchase price had two components: Seo would receive $25 million at the closing and, if certain post-sale gross margin targets (the "Earn–Out Target") were met by December 31, 2001, he would receive up to an additional $25 million, (the "Earn–Out Payment"). (TAC ¶ 18–19) Following the closing, Bumil, which became L & H Korea, entered into a series of licensing and sale agreements with customers who posed credit risks. (TAC ¶ 30) L & H Korea reported revenue of $46 million, nearly $10 million over the Earn–Out Target. The Earn–Out Payment was made by L & H Belgium on January 28, 2000. (TAC ¶¶ 22–23) Based on the high revenues and the urging of Seo, L & H Belgium also contributed $25 million additional capital to L & H Korea (the "Additional Capital Contribution"). (TAC ¶¶ 25–28)

According to the TAC, in his efforts to reach the Earn–Out Target, Seo entered into a series of factoring agreements with the defendants covering the account receivables which were generated by the licensing agreements. In a factoring transaction, as the term is commonly used, an account receivable is sold to a third-party at a price which is discounted off the face amount of the receivable with the third-party assuming the risk of non-collection. *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 704 n. 1 (2d Cir.2007). Of course, as a species of contract, there can be a wide variance in terms among factoring agreements.

Under applicable accounting rules, of which Seo had been made aware, proceeds from the licensing agreements could be taken into account as revenue only where a third party, here the financial institutions, assumed the credit risk. (TAC ¶¶ 31–34) Transactions of this type are referred to as "without recourse" transactions. (TAC ¶ 31) Seo recorded the proceeds from the factoring transactions with defendants as revenue. (TAC ¶ 33)

Unbeknownst to L & H Belgium, Seo allegedly made secret side agreements with the defendants which required that the funds received from defendants be placed into restricted accounts. (TAC ¶ 46) The funds in these accounts could not be withdrawn by L & H Korea but served as "collateral" for what were nothing more than advances or loans to L & H Korea by defendants. (TAC ¶¶ 41; 49–52) Plaintiff contends that Seo produced to L & H Belgium a balance sheet reflecting income from payments funded by defendants which L & H Korea remained obligated to repay to defendants if the accounts were ultimately uncollectible. (TAC ¶¶ 42–43) The secret side deals with defendants

transformed the apparent "without recourse" transactions into "with recourse" or "full recourse" transactions; the side deals effectively reversed the disclosed set of agreements. (TAC ¶ 46)

In August 2000, reports of financial irregularities at L & H Korea began to emerge and the Audit Committee of L & H Belgium initiated an investigation into L & H Korea's operations. (TAC ¶¶ 53–55) In October 2000, the defendant banks produced, at the request of L & H Belgium, written confirmations of the factorings to L & H Belgium's auditors and investigators. (TAC ¶ 57) They also produced statements detailing L & H Korea's accounts at each of the defendants. (TAC ¶ 57) These documents amounted to representations that all of the factoring arrangements between the defendants and L & H Korea were "without recourse" and that none of L & H Korea's accounts were restricted or held as collateral. (TAC ¶ 57) Representatives of each of the defendants orally told L & H Belgium's investigators the same. (TAC ¶ 58) When interviewed by PricewaterhouseCoopers LLP ("PwC") during the course of an investigation which followed L & H Belgium's filing of a bankruptcy petition in the District of Delaware, representatives of defendants (who are individually identified in the TAC) told PwC that the transactions were without recourse. (TAC ¶ 60–62)

Counts I and III of the TAC relate to the Earn–Out Payment to Seo. Plaintiff alleges that the defendants either intentionally (Count III) or through their negligent conduct (Count I) aided and abetted Seo in fraudulently creating two sets of factoring agreements which, in turn, enabled Seo to misstate L & H Korea's revenue and mislead L & H Belgium into making the Earn–Out Payment. (TAC ¶¶ 73; 92) In Count I, plaintiff alleges that each of the defendants "aided and abetted Seo's fraud in a manner and by conduct that was at least negligent, if not intentional, by entering into the 'without recourse' factoring agreements and by allowing the proceeds of the factorings to appear to be unrestricted." (TAC ¶ 70) Plaintiff further alleges that it was "reasonably foreseeable by each of the Defendant Banks that Seo would misuse the 'without recourse' factoring agreements" to mislead L & H Belgium and its auditors into paying Seo the Earn–Out Payment. (TAC ¶¶ 68) In Count III, plaintiff alleges that "[d]efendant Banks knew that Seo would misuse the 'without recourse' factoring agreements." (TAC ¶ 89)

Counts II and IV of the TAC relate to the $25 million Additional Capital Contribution that was made by L & H Belgium to L & H Korea. Count II alleges that, had defendants not acted negligently in failing to disclose the true nature of the factoring transactions, L & H Belgium would not have made the Additional Capital Contribution to L & H Korea. (TAC ¶¶ 82–84) Count IV makes the same factual allegations, except that plaintiff contends that the defendants "affirmatively misrepresented" the nature of the "without recourse" transactions and the restricted nature of the factoring proceeds, leading to the Additional Capital Contribution. (TAC ¶¶ 99–104)

*DISCUSSION*

A. *Rule 9(b)*

Rule 9(b), Fed.R.Civ.P., requires that a fraud claim be alleged with particularity. The requirement protects the defendant's reputation from vague charges of fraud, although "[t]he primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990) (quotations and citations omitted). "[I]n order to comply with Rule 9(b), 'the com-

plaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

■ In pleading a claim of fraud, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b), Fed. R.Civ.P. Conclusory allegations will not suffice and "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995) (internal quotation marks and citation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). While "recitation of the pleading standard for scienter is most familiar in the context of securities fraud, it applies with equal force whenever fraudulent intent must be pled under Rule 9(b)." *Stamelman v. Fleishman–Hillard, Inc.*, 2003 WL 21782645, *6 n. 4 (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990)). "In actions involving multiple defendants, Rule 9(b) requires the plaintiff to plead facts from which fraud may be reasonably inferred as to each defendant." *DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 265 F.Supp.2d 254, 264 (S.D.N.Y.2003) (citation omitted).

Counts I and II of the TAC allege that defendants acted negligently, and, through their negligence aided and abetted the fraud; they are properly viewed as negligence claims, not fraud claims, and are therefore not subject to Rule 9(b). Count III and IV of the TAC allege that the defendants knowingly and intentionally aided and abetted Seo's fraud and those Counts are subject to Rule 9(b).

■ Here, Counts III and IV sufficiently identify the statements alleged to be false, the speakers, where and when the statements were made and why the statements were fraudulent. Plaintiff has alleged that, desirous of the business of L & H Korea, yet fearful of the credit risk posed by its receivables, the defendants entered into a set of "secret side agreements" with Seo which essentially reversed the "without recourse" nature of the original factoring agreements. (TAC ¶ 35, 38–40) The language of the agreements, both the ones allegedly shown to L & H Belgium and those kept secret are set forth in the TAC. (TAC ¶¶ 46) Plaintiff has identified specific "factoring" transactions which were allegedly fraudulent and benefited defendants. (TAC ¶¶ 48–52)

While the TAC does not allege that the mere creation of two sets of agreements was unlawful, it does allege that "[e]ach of the Defendant Banks knew that Seo would misuse the 'without recourse' factoring agreements." (TAC ¶ 89) In support of the allegation that the defendants acted with fraudulent intent in entering into the two sets of agreements, plaintiff alleges that "the Defendant Banks provided direct and material assistance" in concealing the true nature of the factorings from L & H Belgium, its auditors and investigators. (TAC ¶ 43) Plaintiff alleges that "each of the Banks confirmed to [L & H Belgium's] auditor, KPMG, both in connection with KPMG's audit of [L & H Belgium's] 1999 consolidated operations and [L & H Belgium's] 2000 consolidated operations, that the factoring transactions were indeed

'without recourse'". (TAC ¶ 44) Further, plaintiff alleges that in 2000, in connection with the KPMG audit and an internal investigation conducted by the law firm Bryan Cave, LLP, at the request of L & H Belgium, "each of the Defendant Banks produced written confirmations of the factorings and L & H Korea's accounts at each Bank". The written confirmations affirmatively and falsely represented that all of the factoring arrangements with L & H Korea were "without recourse." "The confirmations also falsely showed that none of L & H Korea's accounts were restricted or held as collateral for any loan or other financing." (TAC ¶ 57)

Also, "representative of the Banks affirmatively told the investigators from Bryan Cave that each of the factoring transactions was 'without recourse' and that the sums in L & H Korea's accounts were unrestricted." (TAC ¶ 58) Similarly, when PwC interviewed representatives of the defendants, who are identified individually by name in the TAC, each of defendants' representatives "continued to conceal the true nature of [the] transactions, and, instead affirmatively and falsely stated that the factoring arrangements with L & H Korea were 'without recourse.'" (TAC ¶ 61–62) The repeated misrepresentations by defendants and the active concealment of the second set of agreements is alleged to have facilitated L & H Korea's misrepresentation of its revenue, directly leading to L & H Korea's bankruptcy and the loss of the Earn–Out Payment and Additional Capital Contribution funds to L & H Belgium. (TAC ¶ 63)

Defendants make much of the fact that, in each instance, defendants' allegedly false statements to auditors and investigators postdate the Earn–Out Payment and the Additional Capital Contribution. Defendants contend that, because the statements were made after the Earn–Out Payment and Additional Capital Contribution, they could not have been relied upon in making such payments. The argument is correct as far as it goes. The actionable fraud, however, was not the false statements to auditors and investigators but the knowing creation of two sets of agreements—one open and one secret—for the purpose of enabling Seo to defraud L & H Belgium. Such conduct, if proven to be knowing and intentional, would be material assistance to the primary fraud-doer, Seo, by the aiders and abettors, the banks. The significance of the subsequent alleged lies is that they speak to whether defendants acted with scienter—an intent to deceive at an earlier point in time. The subsequent lies—the cover up—, if proven, would be strong circumstantial evidence of a bank's state of mind and intentions at the time of entry into the two sets of agreements. This is the sort of "conscious behavior" which raises an inference of an intent to defraud. *See Powers v. British Vita. P.L.C.*, 57 F.3d 176, 185–86 (2d Cir. 1995).

 True, not all, subsequent acts speak with equal clarity to a party's original intent. For example, the fact that a party did not perform under a contract often is viewed as not significantly probative of a fraudulent intent not to perform at the time of entering into the contract. *See, e.g., Enzo Biochem, Inc. v. Johnson & Johnson,* 1992 WL 309613, *11–12 (S.D.N.Y. Oct.15, 1992) ("The mere nonperformance of promises is insufficient to create an inference of fraudulent intent."). But subsequent acts, depending on their kind and character, may shed light on a defendant's intent at an earlier time. *See, e.g., Powers,* 57 F.3d at 185–86 (Violating an agreement "maliciously and so soon after it was made" created an inference of fraud at the time of entering into the agreement). At the trial of an action, Rule

404(b), Fed.R.Evid., would permit evidence of other acts, including subsequent acts, as proof of intent. Here, it is difficult to conjure up many innocent explanations for a lie about the existence of a second set of agreements. One who had entered into two sets of agreements innocently and without intent to facilitate the original fraud would be less likely to have lied about them when inquiry was later made. Rule 9(b) does not require that the facts alleged compel only one possible conclusion, i.e. fraud; it is sufficient if the facts give rise to a strong inference of fraudulent intent, as the facts alleged in Counts III and IV do.

The allegations in Counts III and IV of the TAC set forth the who, what, where and when with the particularity necessary to satisfy Rule 9(b). *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989).

## B. *Statute of Limitations*

 A federal court sitting in diversity must apply the procedural laws of the forum in which it sits. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, a federal court sitting in New York will apply the New York statute of limitations applicable to a given claim. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 109–11, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Where a cause of action accrues outside of New York to a non-New York resident, New York's borrowing statute applies to determine the appropriate statute of limitations. CPLR § 202; *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir.1998). Under the borrowing statute, plaintiff's claim is timely if it is timely under both the statute of limitations of New York and of the jurisdiction in which the cause of action accrued. *See Antone v. Gen. Motors Corp.*, 64 N.Y.2d 20, 484 N.Y.S.2d 514, 473 N.E.2d 742 (1984).

*Baena I* applied the place of injury test and concluded that plaintiff's claims had accrued in Belgium. 2006 WL 2935752 at *7; *see Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528, 693 N.Y.S.2d 479, 715 N.E.2d 482 (1999). The Belgian statute of limitations applicable to plaintiff's claims is five years. (De Wulf Decl. at 8(b)). Defendants do not dispute that if Belgium's statute of limitations is applied, plaintiff's claims are timely under Belgian law. *See* De Wulf Decl. ¶ 12; *Baena I*, 2006 WL 2935752 at *7. Therefore, because plaintiff's claims are timely under Belgian law, the jurisdiction in which the claims accrued, they are timely under CPLR § 202 if it is timely under New York law. In *Baena I*, I did not have occasion to address whether plaintiff's claims were untimely under New York law. 2006 WL 2935752 at *6 n. 5. On the present motion, defendants urge that the three-year statutes of limitations in CPLR §§ 214(4) and (2) apply to all claims and that plaintiff's claims are, therefore, untimely under New York law.

### 1. *CPLR § 214(2)*

 Section 214(2) of the CPLR imposes a three-year statute of limitations on claims seeking recovery for a "liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215 ...." (McKinney's 2003). In order for a claim to fall within the purview of CPLR § 214(2), the statute creating the underlying claim must hold defendants liable "for wrongs not recognized in the common or decisional law." *State v. Cortelle Corp.*, 38 N.Y.2d 83, 86, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975). In defining the scope of CPLR § 214(2), the New York Court of Appeals has "consistently held that CPLR § 214(2) ... only governs liabilities which would not exist but for a statute. It does not apply to liabilities

existing at common law which have been recognized by statute. Thus, if the [statute imposing liability] merely codifies or implements an existing liability, the three-year statute would be inapplicable." *Aetna Life & Casualty Co. v. Nelson*, 67 N.Y.2d 169, 174, 501 N.Y.S.2d 313, 492 N.E.2d 386 (1986) (citations omitted). However, where a claim is "akin to [a] common-law" claim, or even has a commonality of elements with a common law claims, yet "would not exist but for the statute", the three-year period set forth in CPLR § 214(2) governs. *Matter of Motor Vehicle Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 220–21, 652 N.Y.S.2d 584, 674 N.E.2d 1349 (1996).

Here, plaintiff has asserted two aiding and abetting claims, two of which allege intentional fraud, Counts III and IV, and two of which are rooted in negligence, Counts I and II. Under the Korean Civil Act ("KCA"), recovery is permitted against a party who through their actions either negligently or intentionally aids and abets a fraud. (Yune Decl. Exh. 1 ¶ 11, Exh. 3 Articles 750, 760(3)) In order to make out a claim under KCA 760(3), a plaintiff must prove: (1) a tort by the principal; (2) actions that aided or abetted the principal's conduct; (3) intent or negligence by the aider/abettor; (4) damage to the plaintiff; and (5) reasonable causation between the conduct of the aider/abettor and principal as well as between the principal's conduct and the plaintiff's damages. (Yune Decl. Exh. ¶ 14)

In determining whether plaintiff asserts a statutory claim within the ambit of section 214(2), it is necessary to determine whether there is a common law analogue to plaintiff's statutory claim. Defendants urge this Court to look to the laws of South Korea while plaintiff urges this Court to look to the laws of New York to determine whether plaintiff's claim exists at common law. The laws of both jurisdictions lead to the same result.

■ That portion of plaintiff's claim which alleges that defendants acted negligently thereby aiding and abetting the fraud does not have a common law analogue in either the laws of South Korea or New York. South Korea is a civil law jurisdiction and there is therefore no common law analogue under South Korean law for claims asserted under KCA § 760. *See* Second Yune Decl. ¶ 24–25; *McConnell v. Caribbean Petroleum Co.*, 278 N.Y. 189, 192–93, 15 N.E.2d 573 (1938); *Leonor v. Ingenio Porvenir C. por A. et al.*, 34 N.Y.S.2d 705, 717 (N.Y.Sup.1942). New York does not recognize a claim for "negligent fraud" but rather requires that a party alleged to have aided and abetted a fraud have actual knowledge of the fraud. *See Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240, 246 (S.D.N.Y.1996) ("[t]ogether, *H2O Swimwear [Ltd. v. Lomas*, 164 A.D.2d 804, 560 N.Y.S.2d 19 (1st Dep't 1990),] and *AA Tube Testing [Co. v. Sohne*, 20 A.D.2d 639, 246 N.Y.S.2d 247 (2d Dep't 1964),] demonstrate that actual knowledge is required to impose liability on an aider and abettor under New York law."), *aff'd*, 152 F.3d 918 (2d Cir.1998). The portion of plaintiff's claim which asserts negligence on the part of defendants in the aiding and abetting of fraud would not exist but for the KCA. Therefore, the applicable statute of limitations is the three-year bar set forth in CPLR § 214(2). As plaintiff has conceded that application of a three-year statute of limitation to the claims would result in those claims being untimely, (12/21/06 Trans. at 21), Counts I and II of the TAC are dismissed.

■ Plaintiff asserts claims for intentional fraud in Counts III and IV of the TAC and those claims are not governed by CPLR § 214(2). According to the language of CPLR § 214(2), actions governed

by "sections 213 and 215" of the CPLR are excluded from section 214(2)'s purview. Subdivision 8 of CPLR § 213 establishes a six year statute of limitation which, under subdivision 6 thereof, applies to "an action based upon fraud ...." Thus, the issue does not turn on whether the fraud claims happen to be statutory but rather that the gravaman of the claim is based upon fraud. *See State v. Bronxville Glen Assoc.*, 181 A.D.2d 516, 581 N.Y.S.2d 189 (1st Dept. 1992). The more specific period set forth in CPLR § 213 is properly applied to the fraud claim. *See Mandarino v. Travelers Prop. Cas. Ins. Co.*, 37 A.D.3d 775, 775–76, 831 N.Y.S.2d 452 (2d Dept.2007). Accordingly, Counts III and IV of the TAC are not barred by CPLR § 214(2).

## 2. *CPLR § 214(4)*

■ Under CPLR § 214(4), "an action to recover damages for an injury to property" is subject to a three-year statute of limitations. (McKinney's 2003). This period of limitation is generally applied to economic torts irrespective of whether they are allege negligence or require some showing of intent on the part of the defendant. *See, e.g., Shared Communications Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 38 A.D.3d 325, 832 N.Y.S.2d 32 (1st Dept.2007) (tortious interference with contract); *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 31, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001) (negligence). However, "[t]he statute of limitations for a claim of 'aiding and abetting' fraud, like a fraud claim itself, is generally six years." *Coveal v. Consumer Home Mortgage, Inc.*, 2005 WL 704835 (E.D.N.Y. Mar.29, 2005) (citing *Cromer Finance Ltd. v. Berger*, 137 F.Supp.2d 452, 482–83 (S.D.N.Y.2001)); *see* CPLR § 213(8).

■ In regard to plaintiff's claim for fraud, neither party has cited, and this Court's research has not revealed, any case where CPLR § 214(4) has been applied to a defendant who knowingly and intentionally aided and abetted a fraud.[2] Subsection 8 of CPLR § 213 is specific in its application to "an action upon fraud". General principles of statutory construction would lead a New York court to apply the specific language of CPLR § 213(8) over the general language of CPLR § 214(4). *Cf. Cavanaugh v. Abbott Labs.*, 145 Vt. 516, 528, 496 A.2d 154 (1985) ("Where a general and a specific statute of limitations are both applicable to a single cause of action, we have held that only the specific statute of limitations shall apply."). I conclude that the claims for fraud are properly governed by the six year statute of limitation set forth in CPLR § 213(8) and Counts III and IV are timely.

## C. *Chohung Bank and Hana Bank's Supplemental Motions*

In addition to joining the omnibus motion filed on behalf of all defendants, Chohung and Hana Bank have each filed supplemental motions seeking dismissal of the claims against them for reasons that are particular to them.

## 1. *Chohung Bank's Motion to Dismiss*

Plaintiff has acknowledged that its pleading is inadequate as it relates to Chohung Bank. The TAC alleges that Chohung "received pledges of all the factored receivables rather than a confirmation that the factoring was with recourse." (TAC ¶ 46(d)(ii)). Rather than keeping funds from the factorings in restricted accounts, as is alleged to be the circumstance with

---

**2.** Having concluded that plaintiff's claims sounding in negligence, those in Counts I and II of the TAC, are barred by the three-year provision of CPLR § 214(2), I do not again consider whether they are also barred by the three-year provision of CPLR § 214(4).

all other defendants, the TAC alleges that the Chohung received pledges from receivable which it had already purchased, therefore confirming the "without recourse" nature of the transactions rather than suggesting a fraudulent second set of "with recourse" transactions. Plaintiff now seeks permission to amend the TAC to include language that "[r]ather than a confirmation that the factoring was with recourse, Defendant Chohung Bank received pledges of the bank accounts at Chohung containing the factoring proceeds to secure the receivable obligations." (Def. Mem. in Opp. at 27) I will permit this limited amendment.

### 2. *Hana Bank's Motion to Dismiss For Failure to State a Claim*

■ Hana Bank contends that the "factoring agreements" executed by it were not signed until June 30, 2000. Plaintiff's losses, however, predated the signing of the agreement with Hana Bank as the Earn–Out Payment was made on January 28, 2000 and the Additional Capital Contributions on March 15, 2000 and April 8, 2000. (TAC ¶¶ 23, 27) Because Hana Bank's alleged acts postdated any loss to L & H Belgium, it argues that the TAC fails to adequately allege causation under South Korean law.

The parties both concede that where the alleged aiding and abetting a fraud occurs after the loss to plaintiff has been suffered, South Korean law does not impose liability absent extraordinary circumstances. (Yune Decl. ¶ 18; Chung Decl. ¶ 10) However, the parties materially disagree as to the showing necessary to demonstrate extraordinary circumstances. (Chung Decl. ¶¶ 10–13) Further, and not surprisingly, the parties disagree as to how a South Korean court would approach the extraordinary circumstances question and neither party offers citation to South Korean case law to clarify the issue.

Defendants urge this Court to apply a tripartite test set forth in a footnote to the Annotated Korean Civil Code. (Yune Decl. ¶ 18, Chung Decl. ¶ 11) According to defendant's expert, Jin–Su Yune, a plaintiff alleging extraordinary circumstances is required to plead that "(1) the principal tortfeasor anticipated and relied upon the aider/abettor defendant's future actions to commit the tort; (2) there are additional losses to the plaintiff which were caused by the defendant's conduct that occurred after the occurrence of damages, or that the defendant's conduct cause the plaintiff to lose the opportunity to recover or minimize the damages; and (3) there is intent or negligence on the part of the defendant." (Yune Decl. ¶ 18) Plaintiff, conversely, contends that there is no single test to determine extraordinary circumstances but rather that the determination of whether there are extraordinary circumstances is taken on a case-by-case basis. Under either side's view of South Korean law, plaintiff has failed to plead "extraordinary circumstances". *Iqbal v. Hasty,* 490 F.3d 143, 157 (2d Cir.2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

Plaintiff has failed to allege any circumstance which would satisfy the extraordinary circumstances requirement as to Hana Bank. Plaintiff has failed to allege that there were additional losses to plaintiff following the signing of the "factoring agreements" with Hana Bank. Plaintiff has also failed to allege that L & H Belgium either lost an opportunity to minimize damages or to recover the Earn–Out Payment or the Additional Capital Contribution. Plaintiff does allege that Hana Bank's concealment of the true nature of the factoring arrangements delayed dis-

covery of the fraud. However, there are no allegations that the financial position of L & H Belgium was in any way compromised by a delay or that, as a result of the delayed discovery of the fraud, plaintiff has lost an opportunity to recover either the Earn–Out Payment or the Additional Capital Contribution. Plaintiff has failed to allege any facts which would move the claim that there are extraordinary circumstances warranting imposition of liability on Hana Bank "across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Accordingly, the TAC is dismissed against Hana Bank in its entirety.

*CONCLUSION*

For the foregoing reasons, the Third Amended Complaint is dismissed as against Hana Bank and Chohung Bank. Plaintiff is granted leave to replead as to Chohung Bank. The Hanvit and Shinhan defendants' motions to dismiss are granted in regard to Counts I and II of the Third Amended Complaint and denied in all other respects.

SO ORDERED.