*445 OPINION OF THE COURT
Christopher S. Ciaccio, J.
A hearing was held on January 18, 2017 and continued on January 30, 2017, pursuant to Correction Law § 168-d to determine both the level of risk the defendant Roy Battle presents to re-offend and to what extent he poses a threat to public safety. Defendant was present for the hearing and was represented by counsel.
Findings of Fact
The defendant (date of birth xx/xx/1978) pleaded guilty to two counts of Penal Law § 130.65 (2)—sexual abuse in the first degree, person incapable of consent by reason of physical helplessness, which acts were alleged to have occurred in 2009. Each count involved a separate victim, and in each instance the defendant put his hand inside the victim’s underwear and touched his penis while he was asleep.
Each victim was at the time of the offense less than 16 years old.
Not charged in the indictment because of the expiration of the statute of limitations was defendant’s sexual contact with a third victim, one TM, who when a minor, would often sleep over at the defendant’s apartment. Several times TM awoke to find that the defendant was grinding his penis into his buttocks, and on one occasion TM woke up to find the defendant holding his penis and attempting to masturbate him.
Defendant subjected all three victims to sexual contact repeatedly over the course of several years.
The defendant was a “youth leader” in a church to which he and the victims belonged. He would assist the youth pastor at the church and help with the youth activities, such as Bible classes, taking the younger kids bowling, going to see movies and sporting events, and other social activities. The defendant was described as a mentor by one of the victims and as a spiritual guide by another. Still another victim spoke of the defendant having been a talented musician and encouraging the victim to play in a band with him.
The defendant upon his release from jail was placed on probation supervision. He maintains a residence in California where he works in the music industry but visits and stays with *446 his parents frequently, who live in Rush, NY within 897 feet of a middle school. He has permission to travel to California.
The People urge the court to adopt the values they proposed in the risk assessment instrument (RAI), which is 140 points, having assessed points as follows:
Risk factor category:
2. Sexual contact with victim: contact under clothing, 10 points;
3. Number of victims: three or more, 30 points;
4. Duration of offense conduct: continuing course, 20 points;
5. Age of victim: 11 through 16, 20 points;
6. Physical helplessness, 20 points;
7. Relationship with victim: professional, 20 points;
12. Acceptance of Responsibility: not accepted, 10 points;
15. Living situation: inappropriate, 10 points.
The total points scored are 140, making the defendant a level three or “high” risk to re-offend.
Conclusions of Law
The People urge the court to adopt the values assessed in their risk assessment instrument.
The defendant asserts that no points should be assessed under risk factor 3, number of victims, since the plea involved an admission to having sexual contact with only two victims. However, the supporting deposition of a third victim, TM, which was received into evidence as exhibit 7, provides clear and convincing evidence of the appropriateness of the points scored in this category.
Defendant objects as well to 20 points having been scored for “professional relationship,” under risk factor 7, on the ground that a “youth leader” is not a “professional” as that term is ordinarily understood.
The New York State Board of Sex Examiners’ Sex Offender Registration Act: Risk Assessment Guidelines and Commentary (2006) (hereinafter Guidelines) states that 20 points are assessed if the crime “arose in the context of a professional or avocational relationship between the offender and the victim and was an abuse of such relationship.” (Guidelines at 12.) It goes on to say that this reference to a professional relationship “reaches health care providers and others who exploit a professional relationship in order to victimize those who repose trust in them.” (Id.)
*447 It has been said that a professional is someone with specific advanced training and certification (see e.g. Chase Scientific Research v NIA Group, 96 NY2d 20, 29 [2001]).
Case law, however, seems to extend the definition of professional to any position through which a person is able “to secure the trust that enabled him to gain access to the victim behind closed doors” (People v Briggs, 86 AD3d 903, 904 [3d Dept 2011] [where the offender was a “minister” at a religious congregation]; see also People v Carlton, 78 AD3d 1654, 1655 [4th Dept 2010] [bus driver of mentally disabled women]; People v Riverso, 96 AD3d 1533, 1534 [3d Dept 2012] [youth soccer coach]; People v Farrell, 78 AD3d 1454, 1455 [3d Dept 2010] [piano teacher]).
Clearly, in the case at bar, the victims—and their parents— placed their trust in a person who represented their church, who was perceived as sharing the same religious beliefs, and who used his relationship with the victims to allow him to be alone with them and take advantage of them sexually.
On the other hand, upon review of the evidence that the court finds clear and convincing, a “youth leader,” as he was described by one of the victims (the other victim who gave grand jury testimony referred to him only as someone with whom he shared a “musical interest”), is a position far below that of what is ordinarily understood to be a “professional,” and to include it within the definition in the Guidelines would render that definition meaningless. There was no evidence that defendant was appointed to the position, received specific training, or had exclusive care of the younger persons put in his charge. It was more apparent that the trust the victims and their parents placed in the defendant was a result of the force of his personality and offers of friendship, not the position as youth leader. The victims spent time alone with the defendant, not because he was a “youth minister,” but because he was a trusted friend. Defendant took advantage of his friendship, not his position, something for which the RAI does not score points.
Accordingly, the court finds that the People have not met their burden of establishing by clear and convincing evidence that the relationship between defendant and the victims arose out of a “professional relationship” within the meaning of the Sex Offender Registration Act, thus the assessment of 20 points with respect to risk factor 7 is not justified.
The defendant urges the court to reject the assessment of 10 points for risk factor 12, failure to accept responsibility, which *448 the People contend is appropriate because the defendant made statements to probation which minimized the extent of his wrongdoing, were inconsistent with an admission of guilt and which left out essential facts that had been part of the plea colloquy. The court required the defendant to reaffirm under oath the truth of the statements he made during his plea colloquy. Accordingly, the court finds that the defendant has accepted responsibility.
The court finds as well that 10 points were inappropriately scored for the defendant’s living situation, per risk factor 15, in that he often stays at his parents’ house in Rochester that is located near a middle school. The evidence establishes that the defendant lives in California, or will as soon as his transfer of probation supervision is completed. He stays at his parents’ house only temporarily.
In sum, the People have established by clear and convincing evidence that the defendant’s score on the risk assessment instrument is 100 points, making him a level two, or “moderate,” risk to re-offend.
Defendant has moved to depart downward from the level three presumptive risk assessment score, arguing that the assessments done by the independent agency Endeavor are more reliable than the risk assessment instrument, and that each assessment concludes that the defendant is a moderate to low risk to re-offend (see People v McFarland, 29 Misc 3d 1206[A], 2010 NY Slip Op 51705 [U] [Sup Ct, NY County 2010], affd 88 AD3d 547 [1st Dept 2011]).
Further, defendant argues that the assessments are based on factors not adequately taken into consideration by the Guidelines, including but not limited to his age, extent (or lack thereof) of sexual preoccupation, non-deviant sexual preference, extent of employment, and violations over the last five years.
Since the court has found the defendant’s level of risk to re-offend is a level two, and defendant makes a credible claim for a downward modification only to a level two, the argument is essentially moot. The defendant has failed to sustain his burden of establishing, by a preponderance of the evidence, that a further departure to a level one (low) risk is warranted. The assessments of the independent testing agency, even if accepted as being credible and true, do not give an unequivocal endorsement to reducing the defendant’s risk to re-offend to a level one.
*449 Accordingly, it is hereby ordered that the defendant/ offender’s risk assessment score is determined to be level two (moderate); that his name be entered in the sex offender registry administered by the New York State Division of Criminal Justice Services, and that the defendant/offender register in accordance with the New York Correction Law as a sex offender.
There was no request that the defendant/offender be given a designation as a sexually violent offender, sexual predator or predicate sex offender.